## ROBINSON VS. STATE OF ARKANSAS.

1. CRIMINAL PRACTICE : *Filing indictment.*

Where the record snows that an indictment was returned into court by a Grand Jury through its foreman, the Supreme Court will not reverse a conviction under it, because the entry fails to show that it was returned by the foreman " in the presence of" the Grand Jury.   It will presume that the Circuit Court would not have permitted it to be returned in their absence.

Robinson vs. State of Arkansas.  .

2.  SAME : *Excusing jurors accepted by the parties.*
   Where a juror discloses his incompetency after he is accepted by the parties
   it is not error in the court to then excuse him.

3.  SAME : *Admitting incompetent evidence by consent.*
   A prisoner has no cause to complain of an admission of testimony, which he
   as well as the State reads in evidence.

4.  JURIES : *How judges of the law.*
   In criminal cases the jury must take the law from the court, but where the issue
   involves a mixed question of law and testimony, they are necessarily the
   judges of the law and testimony, in order to determine the criminal intent, etc.

ERROR to *Pulaski* Circuit Court.
Hon. J. W. MARTIN, Circuit Judge.
*Farr* and *Newton*, for plaintiff in error.
*Henderson, Attorney General, contra.*

ENGLISH, CH. J. :

John Lindsay, Smith Kellum and Peyton Robinson were
jointly indicted in the Pulaski Circuit Court, for murdering
Andrew Taylor by shooting him with pistols. They were
charged with murder in the first degree. On arraignment, the
prisoners pleaded not guilty ; Robinson elected to sever, was
tried, the jury found him guilty of murder in the second
degree, and fixed his punishment at imprisonment in the Peni-
tentiary five years. He filed a motion for a new trial, which
the court overruled, and he took a bill of exceptions ; final
judgment was rendered against him, and he brought error, and
obtained from this court an order for stay of execution until
the errors complaint of could be heard.

I.  The record entry showing the presentment of the indict-
ment to the court, as copied in the transcript is as follows :

"Proceedings, April 23d, 1878.

"This day the Grand Jury, through their foreman, return into
court a true bill of indictment against John Lindsey, Smith
Kellum and Peyton Robinson for murder, first degree, which

Robinson vs. State of Arkansas.

is filed by order of the court and numbered 130 on the present docket.''

Here follows the indictment, and then:

''Filed in open court this 23d April, 1878.''

It is insisted by counsel for plaintiff in error, that the above entry shows that the indictment was returned into court by the foreman of the Grand Jury alone, unaccompanied by his fellows. Such may be the literal construction of the entry, but we do not believe that the Circuit Judge would have permitted the indictment so to be returned.

The statute in force to the time of the adoption of the Criminal Code of procedure declared that ''All indictments found, and presentments made by a Grand Jury, shall be presented to the court by the foreman, in the presence of such jury, and shall be there filed and remain as records.'' Gould's Digest, chap. 52, sec. 87.

This statute introduced no new rule, but was declaratory of the Common Law practice. *Green* v. *State*, 19 Ark., 185.

The Kentucky Criminal Code provides that: '' The indictment must be presented by the foreman, *in the presence of the Grand Jury*, to the court, and filed with the Clerk, and remain in his office as a public record.'' Sec. 120.

*Section 120 of our Code*, which was taken from the Kentucky Code, is in these words: '' The indictment must be presented by the foreman of the Grand Jury, to the court, and filed with the Clerk, and remain in his office as a public record.'' Gantt's Digest, sec. 1779.

Our Code makers have omitted, by inadvertance, we suppose, the words ''*in the presence*'' between the word ''*foreman*'' and the word '' *of* '' where they occur in the Kentucky section from which they copied.

The practice has been the same since the adoption of the Code, as before—for the Grand Jury to go into court in a

body, and for the foreman to present the indictment to the court in the presence of his fellows.

As well permit the foreman of a Petit Jury to return a verdict into court in the absence of the other jurors, as to allow the foreman of a Grand Jury to present an indictment in court in the absence of his fellows. See 1 Wharton Cr. L., sec. 500.

We have no idea that the Circuit Judge permitted the foreman of the Grand Jury, in the absence of his fellows, to present the indictment in this case in court, though the Clerk, by an unskillful and unusual entry, has left room for such an inference. Had the attention of the court below been directed to the form of entry, by a motion to set aside or quash the indictment, or by motion in arrest of judgment, no doubt the court would have ordered the informality to be cured by a *nunc pro tunc* entry. *Green* v. *State*, 19 Ark., 178.

II. The *third* and *fourth* grounds of the motion for a new trial are stated in the motion as follows:

"*Third*—Because the court, of its own motion, excused Isaac Prairie, who had been found competent to serve as a juror in said cause, and who had been accepted by the parties, because the said juror stated that upon reflection he did not think that he could find a party guilty of a crime, the punishment of which would be death.

"*Fourth*—Because the court of its own motion, and against the objection of defendant's attorneys, excused one —— Boddeker, who had been found competent to serve as a juror by the court, and had been accepted by both the State and defendant, because said juror stated to the court that he, after reflection, had come to the conclusion that he was biased, because defendant had been trading with him."

These are mere statements in the motion for a new trial. The bill of exceptions fails to show that the persons above named were accepted as jurors, and afterwards excused by the

court; nor does the record entry of the empanneling of the jury, show the facts stated in the motion, or that the rulings complained of were made by the court.

We may remark, however, that Prairie was an incompetent juror, under the statute (Gantt's Digest, sec. 1911, 7th clause), and properly excused by the court. *Boddeker* was not legally incompetent, but as he stated that he was actually biased, the court had the discretion to excuse him. Ib., sec. 1910; *Benton* v. *State*, 30 Ark., 343; *Lavender* v. *Hudgins*, 32 Ib., 766.

III.    In an amendment to the motion for a new trial, a further cause is stated, thus : "Because upon the trial of this cause the testimony of E. C. Andrews, taken before John H. Howe, a Justice of the Peace for Pulaski County, in the case of the State of Arkansas against Smith Kellum, was, by consent of parties, read as testimony by both the plaintiff and defendant."

The testimony of *E. C. Andrews* is set out in the bill of exceptions, and at the end of it is the following statement in parenthesis :

"This evidence taken before Esquire Howe read by consent also evidence before coroner."

We deem it unnecessary to express any opinion as to whether the court should have permitted the prisoner on a trial involving his life and liberty, to waive the important constitutional right to be confronted with a witness against him, as it seems from the above amendment to the motion for a new trial, that the testimony of Andrews, taken before the committing magistrate in Kellum's case, was, by consent, read in evidence by both the State and the prisoner. Surely the prisoner has no cause to complain here that the testimony was admitted, when he as well as the State. read it in evidence.

IV.    The prisoner asked the court to instruct the jury as follows : "This being a criminal case, you the jury, are the

exclusive judges of the law as well as the evidence. But you are not to make the law, but to determine the law applicable to this case.''

The court refused to give this instruction, and its refusal is made the *fifth* ground of the motion for a new trial.

The court properly refused to give the instruction in the language in which it was drawn.

The sense in which the jury are the judges of the law in criminal cases was well expressed by Chief Justice Watkins, in *Pleasant* v. *State*, 13 Ark., 360—372.

The jury must receive the law from the court, but in cases where the issue involves a mixed question of law and testimony, they are necessarily the judges of the law and testimony in order to determine the criminal intent, etc.

V. The second ground of the motion for a new trial, as stated in the motion is, that after the cause was submitted to the jury, and while they were considering of their verdict, Henry G. Clay, one of the bailiffs in charge of the jury, at the request of L. D. Cassinelli, one of the jurors, procured for him a half pint of whiskey. which he drank in the jury room, while the jury were deliberating and considering their verdict, etc.

In support of this ground for a new trial, the affidavit of Henry G. Clay was read, who states in substance, that on the night of the 5th of June, 1878, while in charge of the jury, and while they were consulting of their verdict, he at the request of L. D. Cassinelli, one of the jurors, procured for him at the store of Garibaldi, one half pint bottle of whiskey, and delivered it to him, and he, claiming to be sick, drank the whiskey, or part of it in his presence, in the jury room, and while the jury were deliberating of their verdict, etc.

The State read a counter affidavit made by three of the jurors who state in substance, that on the second night that

the jury were out in the case, about one or two o'clock, after the jury had lain down on benches, tables and floor, and were generally asleep, Cassinelli, one of the jury, appeared to be very sick, was groaning, vomiting and purging, and manifested much distress, and by his groans and other noises awoke most of the jurymen. He called for whiskey several times, stating that if he could get some it would relieve him. After several efforts some was obtained at Garibaldi's, which seemed to relieve him. He did not appear to be intoxicated. The jury had previously agreed upon their verdict as far as Cassinelli was concerned.

No doubt Cassinelli was very much in want of whiskey, and the bailiff seems to have furnished him with a liberal dose, but it appears that nothing grew out of it to the prejudice of the prisoner. This court has frequently condemned the furnishing of ardent spirits to jurors, or the permitting of them to obtain it, pending a trial. See *Pelham* v. *Page*, 6 Ark., 536 ; *Palmer* v. *State*, 29 Ib., 255.

The better practice in case of necessity, would be to furnish it under the direction of the presiding judge.

VI. The sixth ground of the motion for a new trial is thus stated in the motion :

"Because that since the trial he has discovered and learned that he can impeach the testimony of Wesley East, a witness on the part of the State, who testified on the trial that the defendant (Robinson) handed a pistol to John Lindsey, who killed Andrew Taylor. That he can show by Major Hunley Sevier and Thomas Steel, that the said Wesley East is a man of very bad moral character, and wholly unworthy of belief."

This statement is verified by the oath of the prisoner.

An application for a new trial on the ground of newly discovered evidence, should be corroborated by the affidavits of other persons than the accused, and if possible those of the

newly discovered witnesses themselves.     *Pleasant* v. *State*, 13 Ark., 362 ; *White* v. *State*, 17 Ib., 404 ; *McPherson* v. *State*, 22 Ib., 228.

No excuse is shown for not procuring the affidavits of Sevier and Steel.

Whether in any case a new trial should be granted on the ground of newly discovered testimony to impeach a witness examined on the trial, it is not necessary to decide in this case.

VII.   The *Seventh* ground of a motion for a new trial is that the verdict was contrary to law and the evidence.

We deem it unnecessary to say much about the evidence.

There was testimony conducing to prove that Andrew Taylor, an old negro man, was shot with pistols by Kellum and Lindsay, at McAlmont's station, on the St. Louis, Iron Mountain and Southern Railway, about seven miles from Little Rock, in the afternoon of the first day of April, 1878.   At the time he was killed he seems to have been unarmed, and making no hostile demonstrations.

It appears that at some previous time, he and Kellum had had some difficulty, and that he had shot at Kellum.   He came to the store of Peyton Robinson on the morning of the day that he was killed, where Kellum and Lindsay were, and one or both of them whipped him.   It was not proven that Robinson took any part in the whipping.   He went with Kellum and Lindsay to the station house, near which Taylor was killed. It is not shown that he had any malice against Taylor or any motive to aid in killing him.   He was intoxicated and in bad company.   There is some evidence that immediately before or after the killing, he handed Lindsay a pistol.   Upon the whole we cannot say that there was no evidence to sustain the verdict.

Robinson vs. State of Arkansas.

VIII.   The *First* ground of the motion for a new trial, is stated as follows in the motion :

." Because'defendant says that since the trial of this cause he has discovered the testimony of Frank Walker, by whom he could have proven, and now expects to prove, that he, the said witness, on the first day of April, 1878, the day the murder of Andrew Taylor is said to have occurred, was at the grocery store of Peyton Robinson, in Pulaski County, and saw the defendants, Lindsay and Kellum, whip the said Andrew Taylor, and the said defendant, Peyton Robinson, tried to prevent the said Kellum and Lindsay from whipping or injuring the said Andrew Taylor.   That this occurred on the first day of April, 1878, between the hours of ten and twelve o'clock a. m., of said day.   That he could have proven, and now expects to prove by said Frank Walker, that he, the said witness, after leaving the said grocery store of Peyton Robinson, went to Pattison's Mill, and then came back and went down the railroad in the direction of St. Louis, and when he had gone about ninety feet north of the signal or whistling post, on said railroad, he saw three white men and one colored man ; that one of the white men was Peyton Robinson, and that the colored man was Andrew Taylor.   That witnesses stopped near said railroad, a little north of a large log, near the road, and about thirty feet from said parties.   That said Robinson came and sat on the log near where witness was.   That Lindsay and Kellum spoke of killing or shooting the colored man, and that witness heard the defendant, Peyton Robinson, entreat the said Lindsay and Kellum, not to shoot or kill the colored man, and that witness heard Lindsay and Kellum say to the defendant, Robinson, that it was none of his business. That witness then saw the said Robinson, get on his horse and leave, but returned in a few minutes and ask Lindsay for the keys of his grocery store, and that Lindsay about this

time commenced shooting Andrew Taylor. That this occurred about two or three o'clock p. m., of the first of April, 1878, all of which will appear by the affidavit of said Frank Walker, herewith filed, marked A, and made part hereof. That the defendant and his attorneys used due diligence in preparing his case for trial; and that the above mentioned testimony, newly discovered, has come to his knowledge since his trial, and that he verily believes that if said testimony had been adduced on his said trial, it would have been competent to prove the issue in his favor, and would have changed the verdict."

This statement is verified by the oath of the prisoner.

The supporting affidavit of Frank Walker follows:

"I, Frank Walker, do solemnly swear that on the first day of April 1878, I passed the grocery store of Peyton Robinson, and called or stopped at said store to get a drink. While I was near the store, and after I left it, a colored man came up to the store; Kellum and Lindsay commenced whipping him. I did not see Lindsay whip him, but he urged Kellum and encouraged him to whip him. I know Peyton Robinson and also Kellum and Lindsay. Peyton Robinson tried to prevent Kellum and Lindsay from whipping or injuring the colored man, telling them not to hurt or kill the colored man, but Lindsay and Kellum told Robinson to mind his own business. This happened some time between ten and twelve o'clock, at Robinson's store, near the St. Louis, Iron Mountain and Southern Railroad, about three-quarters of a mile from McAlmont's Station, etc. When I left the store, I went to Pattison's mill, and then came back and went down the railroad towards St. Louis, north of Lasker's store, and about ninety feet north of the signal or Whistling post; I saw three white men and a colored man; Peyton Robinson was one of the men. I stopped near the railroad, a little north of a log, near said railroad. I was about thirty or forty feet from said

parties. Peyton Robinson came and sat on the log near where I was. The other two men spoke of killing or shooting the colored man. I heard Peyton Robinson tell the other men not to kill or hurt the colored man ; he told them the colored man had done nothing to them, and that they ought not to hurt him. They told Peyton Robinson to mind his own business, and leave them. Robinson got on his horse and left, but returned in a few minutes and asked John Lindsay for his grocery keys. Lindsay refused to give them to him, but commenced shooting the negro. I should have sworn to the above facts if I had been examined as a witness. I did not tell any one that I knew anything about this case until after I heard Peyton Robinson was convicted. On last Saturday, the 8th day of June 1878, I saw C. F. M. Robinson, and informed him of what I knew about the case. He is the first man I mentioned to as to my being present at the killing. He is the only person I ever told that I knew anything about the case. I am a daily laborer on a farm. I reside in Pulaski County, seven miles north of Little Rock. I was up the railroad when the trial commenced.''

The affidavit of C. F. M. Robinson, the father of the prisoner, was also produced and read. He states, in substance, that he had no knowledge of the witness, Frank Walker, until Saturday, June 8, 1878, after the trial of his son, when the said Frank Walker made known to him the facts as stated in Walker's affidavit ; nor did he know until the said 8th day of June that there was such a man as Frank Walker, when Walker informed him that he was a witness of the occurrence at the store of the defendant on the first of April, 1878, and that he was present and saw all that was done, and heard all that was said by defendant, north of Lasker's store, at the time of the killing of Andrew Taylor, etc. All of which evidence was newly discovered to affiant and the attorneys of defendant.

We are satisfied from comparing the statement of Walker with the testimony introduced at the trial, as set out in the bill of exceptions, that the alleged newly discovered evidence is not cumulative.

The general statement in the motion, that the prisoner and his attorneys used due diligence in preparing his case for trial, would not be sufficient without stating or showing facts constituting such diligence.

It appears, however, that the defendant was arrested and lodged in jail shortly after Taylor was killed, and continued in prison until the time of the trial, and had to depend very much upon his father for the preparation of his defense so far as procuring witnesses was concerned.

We are under the impression that if Walker had been present at the trial, and testified what he states in his affidavit, and the jury had believed him to be worthy of credit, their verdict might possibly have been more favorable to the prisoner than it was.

The State filed no counter affidavit to impeach the credibility of Walker, or the father of the prisoner.

On this ground the judgment must be reversed, and the cause remanded for a new trial, and plaintiff in error will be tried anew as if upon a charge of murder in the second degree he having, in effect, been acquitted by the verdict of the jury of the charge of murder in the first degree.