## FELKER V. STATE.

Decided May 16, 1891.

1. *Amendment of record—Absence of defendant.*

The record in a prosecution for a felony must show that the grand jury returned the indictment into court, and an omission in this respect cannot be cured by a *nunc pro tunc* order made in the absence of the defendant.

2. *Assault with intent to kill—Sufficiency of indictment.*

An indictment for assault with intent to kill is sufficient, which, after alleging the assault in usual form, charges that defendant " unlawfully, feloniously, after premeditation, deliberation, and of his malice afore-thought, *did attempt to shoot, kill and murder;*" an attempt to kill necessarily implies an intent to kill.

3. *Witness—Impeachment—Offer to make experiment.*

Evidence that an offer to make an experiment out of court to test the truth of his testimony was rejected by a witness is not admissible to discredit him where it does not appear that he had reason to believe that the experiment proposed would furnish a true test.

4. *Evidence—Rebuttal of excluded testimony.*

Where the evidence of the proposed experiment was excluded, the witness should not be permitted to explain that he declined the offer because he thought it was intended to entrap him.

5. *Invading jury's province—Opinion of court.*

In excluding evidence of a proposed test, introduced on behalf of defendant, it was error for the court to remark, in hearing of the jury, that "a man charged with crime has no right to manufacture evidence in his own favor."

6. *Evidence—Other crimes.*

Where an assault is alleged to have been committed at night at the gin-house of the assaulted person, evidence of a previous attempt to burn the gin-house is inadmissible to explain defendant's purpose in going there, in the absence of proof connecting him with such previous attempt.

7. *Instruction—Specific intent to kill.*

It is error to charge that one would be guilty of assault with intent to kill, who, while attempting to commit arson, shoots at another who was endeavoring to arrest him or to protect his own property; there must be the specific intent to kill, which will not be supplied by a general ma-levolent design nor by a specific design to commit another felony.

8.  *Assault with intent to kill—Self-defense.*

It is error to charge that if defendant armed himself with intent to commit arson, and, while endeavoring to execute such purpose, shot at the owner of the building with intent to kill him, he would be guilty of an assault with intent to kill, without regard to the fact that said owner may have shot first and after defendant had turned to flee away. One who has attempted to commit a felony and abandoned it has not forfeited the right to defend himself, during his flight, against impending violence.

9.  *Assault with intent to kill—Justification.*

One who is unlawfully shot at will not be justified in shooting his assailant except in necessary self-defense.

10. *Credibility of witnesses.*

It is not error, where the defendant becomes a witness, to charge that, in determining the credibility of witnesses, the jury may consider their manner on the stand, their apparent bias for or against the defendant, and their interest in the result of the prosecution.

APPEAL from *Franklin* Circuit Court, Ozark District.
HUGH F. THOMASON, Judge.

*J. V. Bourland* and *W. L. Terry*, for appellant.

1.  It was error to refuse to permit appellant to prove that Dain had rejected the "test" of the sound of the guns. This was a relevant circumstance as affecting both the *animus* and credibility of the prosecuting witness.

2.  The court erred in remarking "that a man charged with crime has no right to *manufacture evidence* in his own favor." 51 Ark., 147.

3.  It was error to allow the State to cross-examine Dain for the purpose of showing that the proposed "test" was not made in good faith. 43 Ark., 104.

4.  Proof of an attempt at arson was not competent. 15 N. H., 174; 55 N. Y., 81, 90; 37 Ark., 265; 39 *id.*, 280; Wh. Cr. Ev., secs. 31, 32 *et seq.*; Steph. Dig. Ev., art. 11, p. 18, and art. 12, p. 22; 1 Allen, 572; 9 Cush, 594; Wh. Cr. Ev., sec. 48, and p. 47; 51 Ark., 513; 3 So. Rep., 618; Wh. Cr. Pl. & Pr., secs. 801–2.

5.  The first instruction is erroneous, in that it leaves out the question of *intent*, the very essence of the offense. Wh. Cr. Law, sec. 641; 24 Ark., 348. The second instruction erroneous, vicious and misleading. Sec. 1521, Mansf. Dig.

The third instruction was erroneous. Thomp. on Trials, sec. 2309. The fourth contained long recitals of facts which tended to confuse. 31 Ark., 666 ; 36 *id.*, 117. It gave undue prominence to isolated parts of the evidence. Thomp. on Trials, sec. 2330 ; 37 Ark., 333 ; 30 *id.*, 383. It is misleading, and does' not state the law correctly. 24 Ark., 348 ; Mansf. Dig., sec. 2007 ; Wh. Cr. L., sec. 648. It is open to other objections—it was argumentative ; Thomp. on Tr., sec. 2301—stated facts; *ib.*, secs. 2324, 2295 ; 37 Ark., 598.

6. The record fails to disclose that the indictment was duly returned into court. This cannot be cured by *nunc pro tunc* order without defendant's presence. 39 Ark., 180; 24 *id.*, 636.

7. The indictment is fatally defective. 24 Ark., 348. No felonious intent is charged. See also 34 Ark., 276.

.*W. E. Atkinson*, Attorney General, for appellee.

1. There was no error in refusing evidence of the proposed "test." It was merely an attempt to manufacture evidence.

2. The evidence of Dain of the alleged attempt at arson is within the exceptions to the rule, and admissible to show the motives of defendant. 2 Bish. Cr. Pro., sec. 628; 43 Ark., 371 ; 52 *id.*, 309 ; 14 *id.*, 560.

3. It is too late after verdict to object that the *nunc pro tunc* order was made in defendant's absence. 12 Ark., 260.

4. *Milan* v. *State*, 24 Ark., 348, states the common law correctly, but its strict rules have been modified by our code. Mansf. Dig., secs. 2106, 2107, 2121; 69 Ill., 526.

HEMINGWAY, J. The appellant was tried and convicted of an assault with intent to murder one B. W. Dain, and prosecutes this appeal to reverse the judgment upon the verdict.

1. It is insisted on behalf of the appellant that it does not appear from the record that the indictment upon which he was tried was returned into court by the grand jury. There was no entry of record showing the return of the in-

1. Amendment of record in defendant's absence.

dictment. It bears the clerk's indorsement that it was "Filed in open court on the 22d of February, 1890." No point was raised as to the manner in which it was found or presented until after the jury returned its verdict, when an effort was made to arrest the judgment. Then there was an effort on the part of the State to supply the omission by a *nunc pro tunc* entry, as of the 22d of February, 1890, reciting the return of the indictment into court by the grand jury. So far as the transcript discloses, the proceeding to correct the record was *ex parte*. It is well settled in this State that the record must show a return of the indictment by the grand jury—that an indorsement by the clerk upon an indictment that it was filed in open court does not satisfy the requirement—and that an omission in that respect cannot be cured by a *nunc pro tunc* order made in the absence of the defendant. *McKenzie* v. *State*, 24 Ark., 636; *Green* v. *State*, 19 Ark., 178; *Halbrook* v. *State*, 34 Ark., 520; *Holcomb* v. *State*, 31 Ark., 427; *Miller* v. *State*, 40 Ark., 488. Such objections should be raised by motion to set aside the indictment (Mansf. Dig., sec. 2157); but whether a party, who fails to make such motion and proceeds to trial upon an indictment bearing the ordinary badges of regular and authentic origin, can raise the objection after conviction, is a question we need not decide. A just and speedy administration of the law favors the practice by motion to set aside, and whether it be the only method of reaching the omission or not, it should in practice be adopted by those who question the genuineness of indictments.

2. Indictment for assault with intent to kill.    2. But it is insisted that, conceding the indictment to have been properly found and presented, it is fatally defective in its allegations and insufficient to support a judgment. The defect relied upon is in the allegation charging the intent with which the assault was committed. The allegation as to the assault is full enough to satisfy the most exacting requirement, and seems to follow established precedents; instead of following the allegation as to the assault with the usual form of allegation as to the intent, which

would be " with intent, him, the said Dain, then and there feloniously, wilfully and of his malice aforethought to kill and murder," it substitutes, "and him, the said Dain, unlawfully, feloniously, after premeditation, deliberation, and of his malice aforethought, did attempt to shoot, kill and murder."    It is argued that the terms employed are not the legal equivalent of those used in defining the offense and found in approved forms, and that the variance is fatal to the indictment.    To sustain this contention *Milan* v. *State*, 24 Ark., 346, is relied upon.    But a marked and commendable change has taken place, since that case was decided, in the rules governing criminal pleading and practice, and many matters then deemed substantial are now treated as formal.    In the case of *Dilling* v. *State*,* determined by this court in an unreported opinion by Judge SANDELS, we declined to follow Milan's case, and sustained an indictment which, after charging an assault to have been committed wilfully, feloniously and of malice aforethought, omitted those descriptive words in charging the intent to commit the higher crime.    *State* v. *Lynch*, 26 Pac. Rep., 219.    The elements of the crime charged are, (1) the commission of an assault with malice aforethought, and (2) an intent to commit the independent felony.    As before stated, there is no objection to the form in which the first element is charged; and this narrows the consideration to the sufficiency as to the charge of intent.    The indictment must charge an assault " with intent to kill and murder," either in express terms or in terms that import a legal equivalent.    Is this requirement answered by the charge of an assault and attempt to kill and murder?    An attempt to do an act necessarily implies an intent to do it, coupled with some other act designed to accomplish the intent.    There is no such thing conceivable as an

---

*NOTE.—Dilling's case, which was decided orally, was a prosecution for an assault with intent to commit rape. The indictment alleged that he " feloniously, wilfully and of his malice aforethought, upon one Hettie Stewart, then and there being, did make an assault with the intent her, the said Hettie Stewart, then and there to rape, against," etc.—REP.

attempt to kill and murder without an intent to do it; so that the allegation, by the necessary signification of its terms, charges the criminal intent in terms as plainly expressing it as those found in the statute. This in reason is all that the defendant could ask; and the statute expressly provides that " the words used in a statute to define an offense need not be strictly pursued in an indictment, but other words 'conveying the same meaning may be used." Mansf. Dig., sec. 2119. We are satisfied that the variance in this indictment is one of form, wholly without substance, was not misleading, and is therefore no basis for an objection to the indictment. While we would not encourage an ignoring of precedents or a departure from the descriptive words of statutes, we do not think that a tolerance of such practice in instances like this imperils the rights or liberty of any citizen.

3. Impeachment of witness.

3. The appellant's next objections relate to the exclusion of evidence offered on his behalf, to a remark of the judge made in the hearing of the jury when ruling it out, and to the admission of certain evidence on the part of the State relating to the same matter. It is an undisputed fact that, on the occasion of the assault charged, two shots were fired, one by the defendant and the other by Dain. The parties to the difficulty were the only persons who witnessed it, and each states that the other fired first. Neighbors heard the shooting and distinguished the order of the shots by the character of the report, but could not state which party fired the first shot. Before the trial outsiders proposed to Dain that the guns used by the parties on the night of the difficulty be fired in the hearing of the said neighbors, under as nearly the same circumstances as possible, by disinterested and reliable parties, who would observe which gun was fired first, so that the neighbors might determine which gun fired at this time was first discharged during the difficulty; but Dain declined to participate in the experiment. The appellant offered to prove this proposal and its rejection by Dain, but the court ruled the evidence inadmissible. If the experiment proposed had been of a kind that promised to

furnish a true test as to the matter of difference, or if it had appeared that Dain so thought, its rejection by him would have tended to prove that he was the conscious author of a false narrative, and it would for that reason have been admissible to discredit him.  But there was nothing to show that Dain believed that the difference could thus be correctly tested, or that he declined the experiment because it threatened to disclose his falsehood.  We can not say that the test proposed was one calculated to elucidate the matter, nor that Dain might not well have rejected it as inaccurate and unreliable.  He was cognizant of the facts, and might well have declined to place what he knew against the theories that might be developed upon an experiment affected by numberless changing outward conditions.  If his refusal was thus prompted, as it might well have been, it indicated no conscious falsehood; and the evidence offered should have been excluded.

But after the testimony offered had been excluded, the court permitted the State to prove that Dain declined the offer because he thought it was intended to entrap him. When the testimony as to the offer and its rejection had been excluded, there was no reason to admit testimony explaining Dain's reason for rejecting it, and it should not have been done. *4. Rebutting excluded testimony.*

In excluding the evidence, the judge remarked, in the hearing of the jury, that "a man charged with crime has no right to manufacture evidence in his own favor."  If this implied that defendant had attempted to manufacture evidence in his own favor, it was clearly improper; and since it might have been thus understood, though otherwise intended, it should not have been made.  It can be said, to the honor of the trial judges and juries in this State, that the latter defer greatly to the opinions of the former; and upon matters of law this is proper.  But since the defendant is entitled to be tried upon the facts by a jury, uninfluenced by any opinion of the judge, he should never express or intimate his opinion or manifest a feeling as to those matters *5. Invading jury's province.*

committed to the jury.  While such was certainly not intended by the judge in this case, his remark may have influenced the minds of jurors accustomed to defer to his learning and judgment.

6. **Evidence of other crimes.** 4. The court permitted the State to introduce proof, against the objection of the defendant, as to an attempt that was made to burn Dain's gin-house several days before the assault charged.  As there was no proof connecting the defendant with that attempt, it had no tendency to prove his purpose in going to the gin on the night of the difficulty. It was not proper to admit it for the purpose of explaining the presence of the prosecuting witness at the gin at an unusual hour of the night, for the fact of his presence was not disputed and the reason for it was immaterial.

5. The court gave in charge to the jury, at the request of the State and against the defendant's objections, the following instructions :

(1.) "The court charges you that if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, W. H. Felker, in the Ozark district of Franklin county, within three years next before the finding of the indictment in this case, unlawfully, feloniously and after premeditation, deliberation, and of his malice aforethought, went to the gin-house of the witness, B. W. Dain, in the night time, intending to burn said gin-house, and that, before going to said gin-house, he prepared himself with a gun or pistol with which to insure the success of his purpose or to defend himself against lawful arrest, and that, while at or near said gin-house, with the aforesaid unlawful and felonious purpose, he, the said defendant, shot at witness Dain, who was attempting to arrest him or to protect his property, he would be guilty, and you should so find.

(2.) " If you find that defendant armed himself with a gun or pistol and went to the gin-house of B. W. Dain, in the night time, intending and attempting to burn said gin-house, and that, while there endeavoring to execute such purpose, he shot at witness Dain with intent to kill him, he would be-

guilty of this offense, without regard to the fact that said witness Dain may have shot first at this defendant and after defendant had turned to flee away."

The first, standing by itself, is an incorrect declaration of law, in that it does not make the defendant's intent to kill Dain essential to his conviction. If he did not shoot with intent to kill, he was not guilty of the felony charged, although he may have entertained a present design to commit another felony. The circumstances of the defendant's going to the gin with intent to burn it, and arming himself with a pistol to aid him in carrying out his intent, and Dain's attempting to arrest him in order to protect the gin, would have been better omitted. If the shot was fired at Dain with intent to kill him, that was sufficient to warrant the conviction unless it was done in necessary self-defense; and the law governing that aspect of the case was sufficiently set forth in the next instruction. If the shot was not fired with intent to kill, those circumstances do not warrant a conviction. For neither a general malevolent design nor a specific design to commit another felony can supply the specific intent to kill, which is an essential ingredient in the offense charged.

7. There must be specific intent to kill.

The second seems to state the law correctly, down to the last clause which is neither consistent with the part that precedes it nor a correct statement of the law. If the defendant went to the gin for the purpose of burning it, and attempted to execute his purpose but was discovered before he accomplished it, and fled, abandoning his attempt, he had not forfeited the right to defend himself, during his flight, against impending violence; but could in such case resort to whatever means were necessary to his protection. For this error alone we would be compelled to reverse the judgment; we have adverted to other errors, without indicating what their effect upon the judgment would be, in order that they may be avoided upon a future trial.

8. When right of self-defense forfeited.

6. The defendant asked the court to charge the jury as follows:

S C—32

9. Justification of assault.

"(1.) You have no authority to make inquiry as to why defendant was at the gin of Dain, whether he had stopped to warm or had entered the premises to set fire to the gin, unless you find that the defendant was actually engaged in the overt unlawful act. So that, whatever purpose you may find defendant had in being at the gin-house, you should acquit the defendant if you find that, upon his entering the premises, B. W. Dain fired upon him, before defendant had fired or attempted to fire upon said Dain. (2.) The owner of a gin is not justified in shooting another who enters his premises, even though the owner suspicions that he enters with intent to commit arson, unless such shooting is necessary to prevent the overt act of setting the property on fire."

The prayer was refused, and it is claimed that there was error in its refusal. We do not think the instructions should have been given. If the defendant went to Dain's gin to burn it, and was discovered and shot at by Dain before he did any unlawful act, he would not be justified in shooting at Dain unless that was necessary to his own protection; he was in an attitude where he should have done everything in his power by retreat, disclaimer of a felonious purpose or otherwise, in order to avoid the necessity for a violent defense. His right to shoot, upon the facts recited, was not necessarily perfect when Dain fired, but depended upon an imperious necessity. We can see no aid that the latter instruction could have rendered the jury in arriving at a verdict. In the connection in which it was offered, it was abstract; and if it had been given, and the jury had found that Dain was not justified in shooting, it was not informed what effect that should have in correctly deciding the case. If it was to be understood that such fact alone established defendant's right to shoot, it was entirely incorrect; and if such fact properly led to any other legal conclusion, that should have been stated. We think it was properly refused as asked.

10. Credibility of witnesses.

7. Although the defendant becomes a witness upon the trial, we think the court may well charge the jury that, in

determining the credibility of the witnesses, they may consider the manner of the witnesses on the stand, their apparent bias for or against the defendant, and their interest in the result of the prosecution.

For the error in giving the second instruction set out on part of the State, the judgment will be reversed, and the cause remanded. If the grand jury in fact returned the indictment into court, that may be shown, and the record corrected by a *nunc pro tunc* entry ; but if the indictment was not in fact returned into court by the grand jury, it should be set aside, and the defendant held to await the action of the grand jury. No action can be taken in the matter of amending the record in the absence of the defendant.

Judge MANSFIELD did not participate in the consideration or determination of this cause.