GUINN et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1915.)

No. 3736.

1. CRIMINAL LAW ☞1032—APPELLATE PROCEEDINGS—REVIEW—FINDING AND FILING OF INDICTMENT.

The objection that it does not appear from the record that an indictment was returned by the grand jury in open court cannot be made for the first time in an appellate court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2627, 2628, 2642; Dec. Dig. ☞1032.]

2. CONSPIRACY ☞45—EVIDENCE—CIVIL RIGHTS LAW.

On the trial of defendants, charged with violation of section 19 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1092 [Comp. St. 1913, § 10183]), by conspiring to deprive certain citizens of the right to vote at a congressional election on account of their race and color, it was not error to exclude from evidence an opinion of the Supreme Court of the state holding valid a provision of the state Constitution imposing restrictions on the right of suffrage; it not being shown that defendants had read such opinion, and where the jury was charged that if defendants acted in good faith in rejecting the votes as election officers in the belief that they were illegal there could be no conviction.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 100–104; Dec. Dig. ☞45.]

3. CONSPIRACY ☞47—EVIDENCE—CIVIL RIGHTS LAW.

Evidence held to sustain a conviction of defendants for violation of the Civil Rights Law (Rev. St. § 1980 [Comp. St. 1913, § 3933 (3)]), by conspiring to prevent colored persons from voting on account of their race and color.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. ☞47.]

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Criminal prosecution by the United States against Frank Guinn and J. J. Beal. Judgment of conviction, and defendants bring error. Affirmed.

Charles B. Stuart, of Oklahoma City, Okl. (C. G. Horner, of Guthrie, Okl., and W. A. Ledbetter, Norman Haskell, and Stuart, Cruce & Gilbert, all of Oklahoma City, Okl., on the brief), for plaintiffs in error.

George F. Zimmerman, Asst. U. S. Atty., of Guthrie, Okl. (Isaac D. Taylor, U. S. Atty., of Guthrie, Okl., and John Embry, Sp. Asst. U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before SANBORN and SMITH, Circuit Judges, and WILLARD, District Judge.

SMITH, Circuit Judge. The plaintiffs in error were defendants in the District Court and will be hereafter so styled here. They were charged with a violation of section 19 of the Criminal Code, which is as follows:

"Sec. 19. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States, or because of his having so exercised the same, or if two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured, they shall be fined not more than five thousand dollars and imprisoned not more than ten years, and shall, moreover, be thereafter ineligible to any office, or place of honor, profit, or trust created by the constitution or laws of the United States."

The indictment in substance charged that the two defendants named and divers other persons to the grand jury unknown conspired in violation of section 19 of the Criminal Code on November 8, 1910, to injure, oppress, and intimidate C. W. Stephenson, Alfred M. Keel,

Green Baucom, Sam Fort, Fred McCann, Oliver Andrews, Thomas Pettis, W. T. Smith, colored persons, and divers other colored persons to the grand jury unknown, citizens of the United States, on account of their race and color in the free exercise and enjoyment of their right and privilege secured to them by the Constitution and laws of the United States, namely, the right and privilege to vote in the election of a member of Congress in Union township election precinct in Kingfisher county in said congressional district. The defendants were tried, convicted, and sentenced to serve terms in Leavenworth penitentiary, and sued out a writ of error to this court.

Prior to the election in question there had been adopted in the state of Oklahoma the following amendment to the state Constitution:

Section 4a, art. 3: "No person shall be registered as an elector of this state, or be allowed to vote in any election held herein, unless he be able to read and write any section of the Constitution of the state of Oklahoma; but no person who was, on January 1st, 1866, or at any time prior thereto entitled to vote under any form of government, or who, at that time, resided in some foreign nation, and no lineal descendant of such person, shall be denied the right to register and vote because of his inability to so read and write."

In the trial in the court below the court told the jury that:

"In the opinion of this court, the state amendment which imposes the test of reading and writing any section of the state Constitution as a condition to voting to persons not on or prior to January 1, 1866, entitled to vote under some form of government, or then resident in some foreign nation, or a lineal descendant of such person, is not valid."

This court certified to the Supreme Court the question as to the correctness of this instruction, and the Supreme Court in this case on June 21, 1915, held that the amendment of the Constitution of Oklahoma in question was void.

[1] Many questions, however, remain for determination by this court. It is first suggested in argument that it does not affirmatively appear from the record that the indictment was returned by the grand jury in open court. The printed record before us shows that the indictment was filed in the District Court on June 13, 1911, and was there indorsed:

"No. 617. United States District Court, Western District of Oklahoma. The United States v. J. J. Beal, Frank Guinn. Indictment for Conspiracy. A true bill. E. D. Walton, Foreman Grand Jury. Filed June 13, 1911. C. E. Hunter, Clerk, by A. C. Dolde, Deputy."

On September 19, 1911, it further appears the defendants were arraigned and filed a demurrer to the indictment, which was overruled, and they pleaded not guilty. By a motion, supported by the affidavits of the defendants and their attorneys, it is recited that they first heard that the indictment had been found on September 18, 1911.

The government has filed a supplemental typewritten transcript, which it claims shows affirmatively that the indictment was returned by the grand jury in open court. Ignoring this, the point is not well taken on the printed record. No motion to quash, or plea in abatement, or motion in arrest of judgment, was ever filed on this ground, and

this question was never in any way presented to the District Court. There was no reference to it in the assignment of errors, and there is no specification of error in this court upon this ground. Defendants now rely chiefly on Renigar v. U. S., 97 C. C. A. 172, 172 Fed. 646, 26 L. R. A. (N. S.) 683, 19 Ann. Cas. 1117, and Angle v. U. S., 97 C. C. A. 184, 172 Fed. 658.

The most casual reading of these cases will show a broad distinction between them and this. In those cases the question was raised and relied on in the lower court; in this case it is sought to be raised in argument for the first time in this court. True, if it appear that the court below committed a plain or manifest error in this case, it being a criminal one, we would review the case upon that question; but neither the facts nor the law applicable is either plain or manifest, and we are asked to indulge in a presumption that the indictment was not returned in open court by the grand jury. Had a showing been made to that effect, the facts would at least be plain and manifest; but we are asked to indulge in a presumption without a showing, and doubtless in conflict with the facts. As showing that this suggested error is not either plain or manifest, see State v. Grate, 68 Mo. 22; State v. Lord, 118 Mo. 1, 23 S. W. 764; Cooper v. State, 59 Miss. 267; State v. Crilly, 69 Kan. 802, 77 Pac. 701; People v. Lee, 2 Utah, 441; Miller v. State, 40 Ark. 488; Robinson v. State, 33 Ark. 180; State v. Mason, 32 La. Ann. 1018; State v. Beebe, 17 Minn. 241 (Gil. 218); State v. Weaver, 104 N. C. 758, 10 S. E. 486; People v. Blackwell, 27 Cal. 66. But it is generally held, although the indictment may have been properly brought into court and the record may not sufficiently set out that fact, yet the defendant may waive the objection by not seasonably raising it. Russell v. State, 33 Ala. 366; Douglass v. State, 8 Tex. App. 520; Jinks v. State, 5 Tex. App. 68; Alderson v. State, 2 Tex. App. 10; Kerr v. State, 36 Ohio St. 614; State v. Ledford, 133 N. C. 714, 45 S. E. 944; Gallaher v. State, 17 Fla. 370.

It has been held that upon a suggestion of this kind in the court below the record could have been amended nunc pro tunc to show that the indictment had been presented in open court. Johnson v. State, 24 Fla. 162, 4 South. 535; Halbrook v. State, 34 Ark. 511, 520, 36 Am. Rep. 17; Felker v. State, 54 Ark. 489, 16 S. W. 663; Long v. State, 56 Ind. 133; Waterman v. State, 116 Ind. 51, 18 N. E. 63. And in any event it is held that the sufficiency of the return of the indictment cannot be questioned for the first time on appeal. Westcott v. State, 31 Fla. 458, 12 South. 846; State v. Sharpe, 119 Mo. App. 386, 95 S. W. 298. It is manifest that this question cannot be considered by us.

The first specification of error is that the court erred in not sustaining the demurrer filed to the indictment. It is stated in argument that:

"The attack upon the indictment was predicated largely upon two grounds: First. Because section 5508 of the federal statute (being section 19 of the Criminal Code) upon which this prosecution is based is unconstitutional. Second. Because the matters and things charged in the bill of indictment against these defendants were not within the purview of said section 5508."

"It is not open to question that this statute is constitutional. Ex parte Yarbrough, 110 U. S. 651 [4 Sup. Ct. 152, 28 L. Ed. 274]; Logan v. U. S., 144 U. S. 263, 293 [12 Sup. Ct. 617, 36 L. Ed. 429]." U. S. v. Tom Mosley and Dan Hogan, 238 U. S. 383, 35 Sup. Ct. 904, 59 L. Ed. 1355, decided June 21, 1915.

And in the last-named case the Supreme Court disposed of all the other questions made under this specification adversely to the defendants.

[2] The second specification is that the court erred in excluding, when offered in evidence, the opinion of the Supreme Court of Oklahoma in Atwater v. Hassett, 27 Okl. 292, 111 Pac. 802, sustaining the validity of the amendment to the Constitution of Oklahoma, popularly known as the "grandfather clause." The court below instructed the jury:

"But it is an essential element of the proof resting upon the prosecution, before a conviction is warranted, that the conspiracy of the defendants, if it existed, was corrupt; that is, willful, and with evil intent to injure, oppress, or intimidate the colored voters with respect to their right of suffrage. The charge is that they corruptly conspired against the voters on account of their race and color. The law which governed the rights of the voters has been stated to you—the state laws and the federal Constitution and laws securing to citizens the right to be exempt from discrimination on account of race or color. The question is, then, whether the defendants corruptly combined in purpose to accomplish the end charged on account of the race or color of the voters, or their purpose was an honest one, as they believed it to be in the exercise of their duties as election officers. Such officers are intrusted with the exercise of judgment in the discharge of the function of receiving votes, and they are protected from criminal responsibility in so doing, for honest mistakes. In the opinion of this court, the state amendment, which imposes the test of reading and writing any section of the state Constitution as a condition to voting to persons not on or prior to January 1, 1866, entitled to vote under some form of government, or then resident in some foreign nation, or a lineal descendant of such person, is not valid; but you may consider it, in so far as it was in good faith relied and acted upon by the defendants, in ascertaining their intent and motive. If you believe from the evidence that the defendants formed a common design and co-operated in denying the colored voters of Union Township precinct, or any of them, entitled to vote, the privilege of voting, but this was due to a mistaken belief sincerely entertained by the defendants as to the qualifications of the voters—that is, if the motive actuating the defendants was honest, and they simply erred in the conception of their duty—then the criminal intent requisite to their guilt is wanting, and they cannot be convicted. On the other hand, if they knew or believed these colored persons were entitled to vote, and their purpose was to unfairly and fraudulently deny the right of suffrage to them, or any of them, entitled thereto, on account of their race and color, then their purpose was a corrupt one, and they cannot be shielded by their official positions."

In pursuance to the thought of these instructions the defendants were permitted to show all the communications they had had with various persons on the subject of the enforcement of the grandfather clause, and the advice they had received; but there is no evidence that they had ever seen the opinion of the Supreme Court of Oklahoma, or had ever heard of its contents. For this reason alone it was properly rejected, without reference to the question as to whether the court would take judicial notice of the opinion, so as to preclude its introduction in evidence. That question is unnecessary to determine, and no opinion on it is expressed.

The specifications 3 to 13, inclusive, are with reference to the refusal of the court to give certain instructions asked. So far as correct, they are substantially given in the charge of the court. It is claimed in this connection that, this being a charge of conspiracy, one defendant cannot be convicted without the other. This would undoubtedly be true, if they were charged to be the sole persons in the conspiracy; but the indictment charges the defendants, together with divers other persons to the grand jury unknown. The defendants were both convicted, and no question is presented as to what would have been the effect if one had been convicted and the other acquitted. It is claimed that if any wrong was done it was by the defendant Beal, and not by the defendant Guinn. This contention is sought to be sustained by a showing that Mr. Guinn urged that Stephenson should be allowed to vote; but this very fact shows that Guinn thought he had a right to vote on whether persons should be rejected or not, and in every other case he appears to have acquiesced in what Beal did. That Guinn had the right he supposed he had is also shown by the third paragraph of the constitutional amendment in question. The precinct in question is not one in which registration was required, and the amendment provides that:

"Should registration be dispensed with, the provisions of this section shall be enforced by the precinct election officers when electors apply for ballots to vote."

It is claimed that the defendants were absolutely bound to obey the laws of Oklahoma until declared unconstitutional, and the jury should have been instructed:

"That the mere general purpose to carry into effect the election laws of the state does not constitute conspiracy."

Of course, this is literally correct, but the Constitution of the United States provides that:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, * * * shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." Const. U. S. art. 6.

The laws of Oklahoma provided for county election boards, which selected all precinct boards within their respective counties. Each precinct election board consisted of three persons, an inspector, judge, and clerk, and each of these officers was required to take an oath of office that he would support, obey, and defend the Constitution of the United States. The grandfather clause of the state Constitution is in direct conflict with the Fifteenth Amendment to the Constitution of the United States. Guinn and Beal v. United States, 238 U. S. 347, 35 Sup. Ct. 926, 59 L. Ed. 1340.

Can it be claimed that, if a state statute was baldly unconstitutional, as, for example, it openly re-established slavery, a local inspector or judge of election would be absolutely justified in holding a person thus declared a slave not eligible to vote? We are not disposed to weaken the rule laid down by the Supreme Court of Oklahoma in State v. Cease, 28 Okl. 271, 114 Pac. 251, Ann. Cas. 1912D, 151; but

where a state statute is flagrantly in conflict with the supreme law, and that fact is known to the election officers, they cannot be justified in defying the supreme law upon the ground that what is in form a state law, but in fact is no law at all, pretends to authorize their action. The utmost the defendants were entitled to was fully given by the court when it gave the instructions heretofore quoted.

[3] It is claimed that there was no evidence of the guilt of the defendants. While this question has not been raised as required by the rules, if it were manifestly based upon the truth, we would in a criminal case consider it; but there is abundant, but in some cases contradicted, evidence upon which the jury had the right to infer the conspiracy as charged; even assuming the defendants thought the grandfather clause was valid. The precinct election board was constituted by the county election board, composed of J. J. Beal, inspector, Frank Guinn, judge, and C. W. Stephenson, clerk. Mr. Stephenson was a colored man, he had served in the township as trustee and ex officio assessor for 4 years, had been justice of the peace for 8 years, and postmaster for more than 12 years, and had served on the election board with both of the defendants in prior years. Both of the defendants must have known that he complied with all the requirements of the grandfather clause, even if it had been valid, and Beal said to Stephenson: "I know you can read and write just as good as I can." But they excluded him from his position in the board, at least temporarily, and until after he offered to vote, and his vote was received by the board. They, although well knowing he was entitled to vote, rejected his vote the first two times he offered to vote, and never restored him to the election board. They finally allowed him to vote without any showing. Their action in excluding him from the election board was lawless. The same reason existed for excluding themselves, as they also had to make a showing that they could read and write any section of the state Constitution, or that they or their ancestors were within the exceptions of the grandfather clause, if any showing was necessary by Stephenson. There was exactly the same reason for excluding the whole board that there was to exclude Stephenson.

Mr. Beal excluded from voting, apparently with the approval of Mr. Guinn, J. Hilyard, a colored man, who was a graduate of Alcorn A. & M. College, Mississippi, of Lincoln University, Pennsylvania, and the Bryant & Stratton Institution at Buffalo, N. Y. He was at the time, and had been for three or four years, principal of the Cimarron Industrial Institute, located in the very township where the election was held, and where one of the defendants had lived 22 years and the other 19. There is not the slightest room for doubt as to whether he could vote, even under the grandfather clause, if valid. There seems no room for doubt that the defendants knew that fact.

Mr. G. I. Curran, a colored man, testified that his grandfather was Tommy Curran, was an Irishman and voted. Mr. Curran had been a member of the Legislature for that county, and had been deputy United States marshal. He would have been entitled to vote on his ancestry, and also because of his ability to read and write, and these

facts must have been known to the defendants; but he was excluded from voting.

Oliver Andrews, a colored man, applied to vote, and he was interrogated as to his ancestry, and could not rightfully vote if the grandfather clause had been valid upon his ancestry. He then asked "if I can vote if I can read and write the Constitution?" and was told without examination, "No, you can't read or write at all; go on out."

Thomas Pettis, a colored man, applied to vote. He was interrogated as to his ancestry, and, not being able to qualify upon that, he was not given the opportunity to qualify under the educational test. Told he could not vote, he testified he could read and write the Constitution.

T. J. Adkins, a colored man, swore he was the son of a white man. If this was true, and the grandfather clause was valid, he was entitled to vote on his ancestry. Notwithstanding this fact, he was told he must take the educational test. When he came to write a section of the Constitution, he missed a couple of words, and himself called the inspector's attention to that fact, and was told: "You might as well stop; you won't pass."

After some 40 or 50 negroes had been rejected, because they failed to qualify under the grandfather clause, upon the advice of three citizens of the county, John P. Bradley, Jr., J. A. Banker, and Harvey Utterback, who came to the voting place and advised the negroes to offer to read and write any section of the Constitution, eight or more of the negroes went back to the polls and made this offer, although no one was voting and no one voted at the election after that time. Though more than half an hour elapsed before the polls closed, Mr. Beal announced that they had tried to vote earlier in the day, as they had, and had failed to qualify, and did not think they were entitled to another test or another opportunity. He then called Mr. Guinn, who was also deputy sheriff, and he came to the door, and, without specifying who he was talking to, the persons attempting to vote or the three gentlemen who were advising them, said: "Get back, you sons of bitches; if you don't get back, I will have every one of you arrested."

Mr. Guinn was as much a member of the election board as Mr. Beal, and except in the case of Mr. Stephenson never dissented from anything Mr. Beal did. There was abundant evidence, even assuming that they both thought the grandfather clause of the Constitution was valid, that they had formed a conspiracy to prevent colored persons within its exceptions, or who were able to comply with its terms from voting, and there is no error shown, and the case is affirmed.

WILLARD, District Judge, having departed this life, took no part in the decision of this case.