[No. 1791]

## THE STATE OF NEVADA, RESPONDENT, *v.* EMILE RODRIGUEZ, APPELLANT.

1. CRIMINAL LAW—EVIDENCE—REASONABLE DOUBT—INTENT.
    Under Comp. Laws, 4656, the crime of assault with intent to kill consists of two essential elements, the act of the assaulter and the intent; and to convict one of this crime it is necessary that the intent to kill must be alleged and proved beyond a reasonable doubt.

2. CRIMINAL LAW—TRIAL—ARGUMENTS OF COUNSEL.
    In a prosecution for assault upon a woman with intent to kill, it is reversible error for the prosecuting attorney, in his argument to the jury, to charge the accused with being a "macque," although the court admonished the jury to disregard the statement.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *F. P. Langan*, Judge.

Emile Rodriguez was convicted of assault with intent to kill, and he appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Clarence C. Ward*, for Appellant.

*R. C. Stoddard*, Attorney-General, and *L. B. Fowler*, Deputy Attorney-General, for Respondent.

By the Court, SWEENEY, J.:

The appellant was indicted by the grand jury of Esmeralda County, Nevada, for the crime of assault with intent to kill one Louise Alno, on the 10th day of April, 1908, in the town of Goldfield, Nevada; was regularly tried before a jury; convicted and sentenced to eight years' imprisonment in the Nevada State Penitentiary by the District Judge of the First Judicial District Court of the State of Nevada, in and for the County of Esmeralda.

From the judgment and order of the lower court, overruling appellant's motion for a new trial, appellant appeals, assigning as error the refusal of the district court to grant a

motion of appellant at the conclusion of the direct evidence of the prosecution after it had rested, instructing the jury to acquit the defendant because of the insufficiency of the evidence produced by the state to establish the commission of crime charged in the indictment; secondly, that the court erred in permitting the district attorney, in his closing argument to the jury, to make statements of fact unsupported by the evidence, and not justified by the testimony, of such a prejudicial nature as to seriously prejudice the jury against the rights of the defendant; and thirdly, that the verdict is unsupported by the evidence and contrary to law.

Section 4656, Comp. Laws, in our criminal practice act, provides as follows: "Section 1. In every crime or public offense, there must be a union or joint operation of act and intention, or criminal negligence."

The crime of assault with intent to kill consists of two essential elements: The act of the assaulter, and the intent with which said act was done. (Bishop's New Criminal Law, 8th ed. sec. 729; *People* v. *Devine*, 59 Cal. 630; Russ on Crimes, sec. 438–453; Robinson's Elementary Law, sec. 472; *State* v. *Wilson*, 30 Conn. 500; *Washington* v. *State*, 53 Ala. 29; *Cunningham* v. *State*, 49 Miss. 701.)

Where, in an indictment, such as for the crime of assault with intent to kill, where intent is one of the essential ingredients of the crime, and, to constitute the crime, specific intent enters into the nature of the act itself, to convict one indicted of this crime it is necessary that the intent to kill must be alleged and proved beyond a reasonable doubt. (*State* v. *Zichfeld*, 23 Nev. 316; *State* v. *Lung*, 21 Nev. 209; *State* v. *Newton*, 4 Nev. 410; *Ogletree* v. *State*, 28 Ala. 693; *Walls* v. *State*, 90 Ala. 618, 8 South. 680; *Felker* v. *State*, 54 Ark. 489, 16 S. W. 663; *People* v. *Mize*, 80 Cal. 41, 22 Pac. 80; *Patterson* v. *State*, 85 Ga. 131, 11 S. E. 620, 21 Am. St. Rep. 152; *Lanier* v. *State*, 106 Ga. 368, 32 S. E. 335; *Kimball* v. *State*, 112 Ga. 541, 37 S. E. 886; *Crosby* v. *People*, 137 Ill. 325, 27 N. E. 49; *Thompson* v. *People*, 96 Ill. 158; *Flint* v. *Comm.*, 81 Ky. 186, 23 S. W. 346; *State* v. *Evans*, 39 La. Ann. 912, 3 South. 63; *Roberts* v. *People*, 19 Mich. 401; *State* v. *Stewart*, 29 Mo. 419; *Ward* v. *State*, 58 Neb. 719, 79 N. W. 725; *Botsch* v. *State*, 43

Neb. 501, 61 N. W. 730; *State* v. *Colvin*, 90 N. C. 717; *Sharp* v. *State*, 19 Ohio, 379; *Comm.* v. *Clark*, 6 Grat. 675; *State* v. *Taylor*, 70 Vt. 1, 30 Atl. 447, 42 L. R. A. 673; 67 Am. St. Rep. 648; *People* v. *Stites*, 75 Cal. 570, 17 Pac. 693; *State* v. *Wells*, 31 Conn. 210; *Comm.* v. *Willard*, 22 Pick. 476; *People* v. *Sweeney*, 55 Mich. 586, 22 N. W. 50; *State* v. *Butman*, 42 N. H. 490.)

A review of the witnesses on behalf of the state and evidence adduced discloses that Louise Alno, the party on whom, it is alleged in the indictment, the assault with the intent to kill was perpetrated by the appellant, called as a witness on behalf of the state, testified that on the occasion of the assault in question, when she was shot, believing that appellant was about to commit suicide, when he drew the gun to shoot himself she grabbed the gun, and in so doing caused the shots to go downward into her leg and heel. There is not a scintilla of evidence in her testimony wherein she testifies that she believed the appellant intended to kill her, or, what is more, to do her any bodily harm whatever. Dr. Turner, on behalf of the state, simply testified to the nature of the wounds when he dressed the same; Vernon Bee testified to the hearing of the shots, and noticed the defendant walking away from the scene of the trouble, and the screaming and running away of the woman; Bart Knight testified to arresting the defendant and taking the gun away from him; and one Charles Webb, who is the only witness to connect the defendant in any way with attempting to shoot at the woman, and that only in an inferential answer, which would not be admissible as evidence if objected to, stated in answer to the following query:

Q. Could you determine from the flash at what the man was shooting? A. No; he was so—— Naturally think he was shooting at the lady though. When she ran, he threw the gun down this way [showing].

It will be observed from his answer to the query of the prosecution that he does not state positively that the defendant shot at the woman, but that he thought defendant did. Without passing upon the very questionable sufficiency of the evidence thus produced by the state on which this verdict was rendered, and which is here cursorily reviewed to emphasize

the possible prejudicial effect on the jury of certain remarks of the district attorney hereinafter set forth, we will pass to the assignment of error of the appellant alleging as prejudicial to defendant's rights, certain statements made by the district attorney in his closing argument to the jury, which we think are of such a prejudicial nature that the judgment herein must be reversed and a new trial granted.

Appellant assigns as error the following language of the district attorney in his closing argument to the jury: "Mr. Swallow—Would you suppose these dear little women would testify to the truth? Gentlemen, we know they will not, even if she is a state's witness. We know these dear little French women, who lie in the arms of their macques for many long months, in a case of this kind are always forgiving, and only too willing to say, 'Don't punish him.' * * * There is nothing so damnable, nothing more criminal in the world, than the treatment of a woman by her macque, and especially is this true among that class of people in their particular locality. * * * She said she did not remember. I ask you, gentlemen, to wipe her testimony out for all purposes except one, and that is to show that the other French macques in that neighborhood have intimidated her so that she dare not go on this stand and tell the jury—— Mr. Ward—We object to any such remarks by counsel for the state, and move that they be stricken from the consideration of the jury. The Court—I instruct you, gentlemen, not to consider the remarks of the district attorney just spoken. It is hardly proper, Mr. Swallow."

The evidence disclosed in the record, to say the least, without passing on its sufficiency, lays a very weak foundation on which to support a verdict of assault with intent to kill. Considering the character of the remarks made against the defendant by the district attorney—remarks which are unwarranted by any evidence introduced, and which are certain to prejudice and inflame the minds of any Nevada jury, if they believed them to be true, because of the natural revulsion, well merited, and loathsome contempt held for men of this character—we are of the opinion that said remarks unduly influenced the jury in arriving at their verdict. It is hard to

conceive of any charge that could be made against any man, let alone an accused in the position of the defendant on trial for assault with intent to kill, which would tend more to influence a jury against him in this state, than to charge him with being a macque. I do not think it is stating it too strongly to say that, once such a charge is made against a man, if believed to be true, it would be difficult to find any jury in this state which would not be so prejudiced as to bring in a verdict of conviction against an accused, no matter on what charge he was being tried, believing that in so doing that on general principles they would be in a measure justified in not having strictly adhered to the evidence and instructions of the court.

Considering the character of the case made against the defendant, the seriousness of these charges, unsupported by the evidence, and the fact that they were made before the jury in the closing argument when counsel for defendant had no opportunity to criticise or reply to them, and considering the remarks coming from an officer of the court clothed with authority to speak for the state, and a public officer whom juries have a right to regard as unprejudiced, impartial, and nonpartisan, and bent only on seeing justice done and the law vindicated in accordance with the rules of law, we cannot say that the mere objection of counsel for defendant, and admonishment of the court to the jury to disregard the statement of the district attorney, were sufficient to remove from the minds of the jury the poison and prejudice already sown against the defendant by the district attorney.

We cannot escape the conclusion that the fair and impartial trial to which the defendant was entitled was prejudiced by the remarks of the district attorney, and that the remarks were well calculated to influence the jury in the present case. (*People* v. *Bowers*, 79 Cal. 415, 21 Pac. 752; *People* v. *Treat*, 77 Mich. 348, 43 N. W. 983; *State* v. *Ulrich*, 110 Mo. 350, 19 S. W. 656; *Holder* v. *State*, 58 Ark. 473, 25 S. W. 279; *State* v. *Irwin*, 9 Idaho, 35, 71 Pac. 608, 60 L. R. A. 716, citing with approval 58 Ark. 473, 25 S. W. 279; *Gutzman* v. *Clancy*, 114 Wis. 589, 90 N. W. 1081, 58 L. R. A. 744; *Prewitt-Spurr Mfg. Co.* v. *Woodall*, 115 Tenn. 605, 90 S. W. 623; *Ivey* v. *State*, 113 Ga.

1062, 39 S. E. 423, 54 L. R. A. 959; *Wilson* v. *Territory*, 9 Okl. 331, 60 Pac. 112; *State* v. *Balch*, 31 Kan. 465, 2 Pac. 609.)

Prosecuting attorneys, unfortunately, too often forget, in their zeal to secure convictions, that they have a duty to perform equally as sacred to the accused as to the state they are employed to represent, and that is to see that the accused has the fair and impartial trial guaranteed every person by our Constitution, no matter how lowly he may be, or degrading the character of the offense charged, and that it is equally as reprehensible for prosecuting attorneys to violate their oath as an attorney and officer of the court in this respect, as they are censurable if they allow the guilty to escape the trial and punishment provided by law. It is their duty to use all fair, honorable, and lawful means to secure the conviction of those who may be indicted, but, in so doing, they should also see that nothing but competent evidence is submitted to the jury, and, above all things, should not in their actions before or statements to a jury make prejudicial and improper statements which they know would not be admissible otherwise. It seems to be a peculiar trait and ambition of some prosecuting attorneys, carried away through misguided zeal, to overprove their case when a conviction is otherwise certain, and to exert their skill and ingenuity in seeing how far they can trespass on the verge of error, and, generally in so doing, trespass upon the rights of the accused, thus causing the necessity of courts of last resort to reverse causes and order new trials, to the expense and detriment of the commonwealth and all concerned.

The judgment and order of the lower court denying appellant's motion for a new trial are reversed, and cause remanded for a new trial.

NORCROSS, C. J.: I concur.

TALBOT, J., concurring:

I concur. Considering the different shots fired, which hit and wounded the woman, that one of the witnesses testified that he saw the defendant shooting at her, and the other testimony of this character in the record, there was ample evidence to justify the court in denying the motion for a nonsuit, and for the jury to consider.