JANET LEE EMERSON, Appellant, *v*. THE STATE OF NEVADA, Respondent.

No. 12562

April 28, 1982                                    643 P.2d 1212

*Morgan D. Harris,* Public Defender and *Terrence M. Jackson,* Deputy Public Defender, Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ZENOFF, SR. J.:[1]

Appellant Janet Emerson was convicted of forgery (NRS 205.090), upon a jury verdict. She contends that the judgment of conviction should be reversed on the basis of (1) the failure of the trial court to give the jury any instruction regarding evidence of her "good character," and (2) prosecutorial misconduct. We agree.

At trial, the state presented the testimony of Mr. Clay Sims, an elderly resident of Clark County, to the effect that in October, 1977, he had been called by his bank with an inquiry about one of his checks. At that point, he testified, he noticed that his check book was missing. The last time he remembered seeing it was at a grocery store near his home in Las Vegas. At the bank, he confirmed that the signature and writing on the check were not his. He testified that they were not made on his authorization or behalf. A bank teller identified the same check as one she cashed at a drive-in window without seeing the presenter. A handwriting expert identified the writing on the check, other than the signature, as that of the person writing an exemplar under the name Janet Emerson.

The state's final witness was Officer Dunlop of the police forgery detail. He testified that the defendant came in, was informed of and waived her rights, and admitted filling in her name as payee, $375 as the amount of the check, "for stereo" on the purpose line, and her endorsement. According to his testimony, she said that she "had received the check in payment for a TV from a subject. She gave a vague description of

[1]THE HONORABLE DAVID ZENOFF, Senior Justice, was assigned to participate in this case by the Chief Justice, pursuant to Nev. Const., art. 6, § 19(1)(c), SCR 10.

the subject, stated she knew him but not by full name; that he frequented bars on the Boulder Highway and that he had signed the maker's signature on the check and gave the check to her to fill in and take [sic] the TV and left.''

Officer Dunlop gave contradictory testimony regarding whether the defendant had identified the payer as ''Mr. Sims,'' by no name, or by first name only. At one point, the officer testified that she ''did indicate that the maker's signature of Clay Sims was made out in her presence'' by another person whom she knew ''not to be Clay Sims.'' On cross-examination, he testified that the conversation had taken place about one year earlier, and that he did not take any notes. The officer was also permitted to testify, over objection, that after he told her to try to find this other individual, the defendant never contacted him again.

The defense was that Janet Emerson had no intent to defraud. She testified that in October, 1977, she and her husband had driven to Las Vegas from Pahrump, and had run into an acquaintance they knew as ''Wayne'' in a shopping center parking lot. She testified that he had asked them for help in cashing a check because he did not have proper identification. Janet further testified that her husband had called his mother, who had worked in a bank, to ask about cashing the check, which had no named payee, and that her mother-in-law had said to fill in her own name and endorse the check. Janet testified that the check was already signed, but that she had filled in the rest from Wayne's instructions, including the amount of $375 and ''stereo.'' She then testified she went to the bank and cashed the check. She testified that after her conversation with Officer Dunlop, she went to the apartment complex where they had known Wayne, but that their mutual acquaintance had moved.

The defense called appellant's mother-in-law who substantially corroborated Janet's testimony regarding the phone call. According to the witness, her son ''said a friend had a check and he couldn't get it cashed because he didn't have I.D. I asked him the amount. It was quite sizeable, around 350, 400 dollars, and I told him, well, Janet has I.D. Have him endorse it over to her and take it over to the bank.'' She also testified that ''I asked him who the check was made out to, and he said it was blank. I said, 'Well, just have him write Janet's name in'.''

Finally, Janet's mother-in-law, a fellow worker, and her supervisor testified positively regarding Janet's reputation for honesty.

On rebuttal, the state recalled Janet's mother-in-law and asked one question: "Where is your son James today?" Officer Dunlop was also recalled, who testified that Janet did not mention meeting "Wayne" in a parking lot, and that "the only story I was told by her was he had purchased a TV from her." He also testified that the defendant told him "the check was given to her in blank with the marker's signature only on the check." The defense recalled Janet Emerson, who denied saying anything about a TV set to Officer Dunlop, and further testified that she had not given him all the details of the incident because she felt "insecure with him."

1. Defense counsel submitted to the trial court four alternative instructions dealing with the proper weight to be accorded evidence of a defendant's good character. All four were refused by the trial court, which did not offer any instruction regarding the evaluation of good character evidence.

NRS 48.045(1)(a) provides that although the basic rule is that "[e]vidence of a person's character or trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," a specific exception is made for "[e]vidence of his character or a trait of his character offered by an accused, and similar evidence offered by the prosecution to rebut such evidence."

This Court has recently quoted with approval:

> It has long been the rule that it is the duty of the trial judge to instruct the jury in substance that reputation of the defendant's good character, when put in evidence, is a fact which they should consider with the other facts in the case and which, when so considered, may, like other facts, generate a reasonable doubt which would justify acquittal.

Beddow v. State, 93 Nev. 619, 625, 572 P.2d 526, 529 (1977), *quoting* United States v. Frischling, 160 F.2d 370, 370 (3d Cir. 1947). The Court in *Frischling* held that it was reversible error to refuse to instruct the jury: "Good character, when considered in connection with other evidence in the case, may generate a reasonable doubt sufficient to justify you in acquitting the defendant." 160 F.2d at 370.

The state argues on appeal that the instructions were properly refused because they incorrectly stated the law because they "would have required the jury to acquit the defendant if they found she had good character." It is difficult to read this in any of the offered instructions, each of which simply states either that such evidence "may be sufficient by itself to raise a reasonable doubt," or that the jury "may" draw an inference,

or think it improbable that a defendant of such character would commit the crime.

In any case, it has been held that in the absence of any acceptable instruction regarding good character, it is "incumbent upon [the state] to suggest a revision." State v. Allen, 574 P.2d 1182, 1187 (Wash. 1978). The court in United States v. Frischling, *supra,* 160 F.2d at 370, 371, stressed that the error was in the trial judge's failure "although specifically required to do so, to give [the jury] any guidance as to what part that fact [of good character] could play in their consideration of the defendant's guilt." (Emphasis added.) The court noted, "A jury who were not told that the defendant's reputation for good character when considered in light of the other evidence might be permitted to raise the sort of doubt in their minds which would justify acquittal, might well regard evidence of such reputation as wholly irrelevant to the specific issue of guilt committed to them and consequently give it no consideration whatsoever." *Id.* at 371.

The prejudice resulting from failure to give such an instruction is apparent in the particular circumstances of this case. An element of the crime of forgery is the specific intent "to damage or defraud." NRS 205.090. As noted by defense counsel to the jury, appellant admitted committing the acts with which she was charged; her defense was that she lacked this specific intent. The state's evidence in this regard was not strong. In these circumstances, clarification of the proper weight to be accorded testimony regarding defendant's reputation for honesty may well have affected the verdict, and we cannot regard the error as harmless.

2. Appellant has also raised a number of issues regarding the prosecutor's conduct of the trial. First, appellant contends that it was improper and highly prejudicial for the prosecutor to comment upon the defendant's failure to call her husband as a witness.

The marital privilege is defined in NRS 49.295, which provides that a husband cannot be examined as a witness for or against his wife without her consent. Our statutes further explicitly provide that the claim of a privilege "is not a proper subject of comment by judge or counsel," and that "[n]o inference may be drawn therefrom." NRS 49.405(1).

In this case, the prosecutor, on rebuttal, called the defendant's mother-in-law for the sole purpose of asking her: "Where is your son James today?" The inference was clear. In his final presentation to the jury, the prosecutor argued:

Ladies and gentlemen of the jury, if this were a case in which you were charged with this crime and this was your defense, your defense was that your husband James duped you or your defense was that there was some mistake made by your husband James, what would you do? Would you subpoena James? Would you exercise your power as an officer of the Court which is what Mr. Jackson is and bring James into Court, put him on that witness stand and have him tell you where he is, what happened on that day, and how he did or did not dupe this young lady?

Defense counsel objected on several grounds, though without raising the privilege issue in front of the jury. The court stated that it was "permissible for an attorney to argue that the other attorney has the right to subpoena witnesses and didn't." The court then instructed the prosecutor to "go on to another subject," after which the prosecutor stated to the jury: "it should be obvious that James should have been here or his absence should have been explained." The court did orally instruct the jury at that point that "there is no burden upon the defendant to explain the absence of a witness." At the conclusion of the prosecutor's rebuttal, defense counsel requested a mistrial.

Although the defense counsel's objections were not couched in the language of privilege, it has been held improper for the prosecutor to force invocation of the privilege in front of the jury. *See* State v. Levy, 160 N.W.2d 460 (Iowa 1968); *see also* NRS 49.405(2). The comments of the prosecutor were clearly improper. *See* State v. Levy, *supra;* Commonwealth v. Moore, 309 A.2d 569 (Pa. 1973); State v. Torres, 554 P.2d 1069 (Wash.App. 1976). *Compare* People v. Coleman, 459 P.2d 248 (Cal. 1969) (proper to comment after evidence code changed to abolish defendant's privilege).

Appellant also complains that although admonished a number of times, the prosecutor continued in closing argument to suggest that it was the defendant's burden to produce proof by explaining the absence of witnesses or "come up with something." This implication is, of course, clearly inaccurate. *See* Mullaney v. Wilbur, 421 U.S. 684 (1975); In re Winship, 397 U.S. 358 (1970).

Finally we note that the prosecutor did make several comments which came very close to suggesting his personal belief in

defendant's guilt, rather than arguing evidence and inferences. A prosecutor does not appropriately offer his personal opinion as to the guilt or the character of the accused. Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966).

We believe it is apt to recall the expression of the United States Supreme Court in Berger v. United States, 295 U.S. 78, 88 (1935), quoted by us some twenty years ago in Garner v. State, 78 Nev. 366, 370, 374 P.2d 525, 528 (1962):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. See also State v. Rodriguez, 31 Nev. 342, 347, 102 P. 863.

We reject the state's argument that the accumulation of improper suggestions and remarks should, in the context of this case, be viewed as harmless. As we have previously observed: "In close cases of this character where counsel's argument to the jury by virtue of the uncertain state of the evidence is magnified in importance, the importance of avoiding undue appeals to sympathy, passion and prejudice are likewise magnified." State v. Kassabian, 69 Nev. 146, 148, 243 P.2d 264, 265 (1952).

We accordingly reverse the judgment of conviction and remand this case for a new trial.

GUNDERSON, C. J., and MANOUKIAN, SPRINGER, and MOWBRAY, JJ., concur.