UNITED STATES of America,
Plaintiff-Appellee,

v.

John FRASCONE and David Allen
Burcky, Defendants-Appellants.

No. 83–1888.

United States Court of Appeals,
Fifth Circuit.

Nov. 16, 1984.

Bruder & Cooper, Melvyn Carson Bruder, Dallas, Tex., for Frascone.

Russell W. Schell, Dallas, Tex. (court-appointed), for Burcky.

James A. Rolfe, U.S. Atty., Robert R. Smith, Jr., Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

David Allen Burcky was convicted by jury of conspiracy to distribute methamphetamine, 21 U.S.C. § 846, two substantive counts of distribution, 21 U.S.C. § 841(a)(1), and of illegal use of a telephone to facilitate the distribution, 21 U.S.C. § 843(b). John Frascone, jointly indicted, was convicted of conspiracy to distribute methamphetamine, two counts of aiding and abetting methamphetamine distribution, 18 U.S.C. § 2, and two counts of illegal use of a telephone to facilitate the felonious distribution. Burcky contends: (1) that his right to effective counsel was abridged because the court denied a continuance; (2) the government's investigative methods constituted entrapment as a matter of law; (3) hearsay evidence was admitted, denying his right of confrontation; (4) the government's method of investigation and prosecution violated due process barring conviction or further prosecution; and (5) the trial court failed to give an appropriate agency instruction as to a government source. Frascone complains of (1) admission of hearsay evidence; (2) wrongful withholding of a continuance; (3) prejudicial comment by the prosecutor; and (4) impermissible restriction of defense counsel's argument. Finding no merit in any complaint except as noted herein, and no reversible error, we affirm.

### Facts

The pertinent factual scenario begins with Garry Marcus Gunter agreeing to

serve as a contact between FBI agent Donald Sanchez and persons in the Dallas, Texas area engaged in drug traffic. In return, Gunter was to be given some consideration in the disposition of a bank fraud charge pending in Houston. Upon confection of the mutual assistance pact, Gunter gave Sanchez a small package of methamphetamine which he said came from Frascone. Gunter also showed Sanchez an Able Repair Service business card containing two telephone numbers. Sanchez then devised a simple undercover operation designed to ensnare Frascone. Sanchez was to pose as a customer interested in purchasing a large quantity of methamphetamine. Gunter would provide the initial contact and serve as the conduit.

Implementation of the plan began on August 1, 1983 when Gunter, under Sanchez's supervision, placed monitored and recorded calls to Able Repair Service. Frascone owned Able Repair Service and Burcky was employed there. As a result of these conversations, Sanchez, Gunter and Burcky met in mid-afternoon at a public library where Gunter introduced Sanchez to Burcky as the potential customer. Burcky gave Sanchez five small packets containing samples of the available methamphetamine. No money changed hands. Following additional telephone conversations, on August 2, 1983 Sanchez, Gunter and Burcky arranged to meet at a Dallas motel to consummate a transaction involving the sale of 25 ounces of methamphetamine for $52,000. The two met in a motel room Burcky had rented and the transaction was completed. Burcky was then arrested. Shortly thereafter Frascone was arrested at his place of business.

On August 10, 1983 the grand jury returned a two-count indictment charging Burcky with distribution and Frascone with aiding and abetting. On September 27 a six-count superseding indictment charging conspiracy, distribution, and use of communication facilities was handed up. Trial was set for October 4, 1983. In preparation for trial the government secured a writ of habeas corpus ad testificandum for Gun-

ter who was then incarcerated in an Alabama jail.

Just prior to trial, in the course of pretrial discovery, defense counsel learned of the existence of the recorded telephone conversations of August 1–2, 1983. On October 4 and 6, respectively, counsel for Frascone and Burcky moved for a continuance based on their need to review the tapes. Frascone added that he needed more time to prepare for the additional charges contained in the superseding indictment. These motions were granted and the trial was reset for October 11, 1983.

On October 7, 1983, Frascone and Burcky jointly filed a motion to compel the government to produce tapes of the relevant telephone conversations which were said to be in the possession of the FBI or DEA in Selma, Alabama. The authorities had allegedly found the tapes in Gunter's personal possessions when Gunter was arrested there. In the memorandum in support of the motion, counsel specifically invoked Rule 16 of the Federal Rules of Criminal Procedure. The motion was granted, subject to an *in camera* review if the government challenged discoverability. Three tapes were produced, two were blank. The government challenged, and after an *in camera* examination the trial court found the remaining tape not subject to discovery. No reasons were assigned for the ruling.

On that same day, defense counsel moved for access to Gunter who had been brought to Dallas from Alabama and was being held by the United States Marshal pursuant to the writ of habeas corpus ad testificandum. This motion was granted and on October 10, 1983 counsel met with Gunter. According to the affidavits of defense counsel, they then learned that Gunter had substituted two blank tapes for two tapes which contained recorded conversations. Gunter further informed counsel that the government was not aware of these two tapes and that he would not reveal their whereabouts. Acting on this information, counsel for Frascone and Burcky filed a joint motion to compel Gun-

ter to surrender the tapes. As reflected by the supporting memorandum, counsel relied on Fed.R.Crim.P. 16 and the doctrine of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This motion was denied. No reasons were assigned for the ruling.

On the first day of trial Frascone sought and was granted a writ of habeas corpus ad testificandum for Diane Dollar Gunter, the 18-year-old wife of Garry Gunter, who was then being held by the authorities in Selma, Alabama. In the ensuing six-day trial, the government relied principally on the testimony of agent Sanchez. The recorded telephone conversations were introduced into evidence. Gunter was not called as a witness.

The defense called several witnesses, including Diane Gunter. The defense did not call Garry Gunter. The thrust of the defense was that appellants did not intend to participate in a sale of drugs, but rather, they were involved in what they believed to be a "sting" of a Nigerian drug purchaser as a means of securing funds so that Gunter could repay a debt owed Frascone. The defense insisted that the government entrapped them into committing the charged crimes. The jury returned verdicts of guilty on all counts.

### Analysis

1. Continuance.

■ There is no record support for the complaint that the district court failed to grant a continuance to the defense. The only motions for continuance filed were granted. Appellants suggest that the trial court was obliged to grant a continuance *sua sponte* when the defense moved to compel production of the tapes Gunter allegedly had but had secreted from the government. No authority is cited for this novel proposition. We are not prepared to say that the trial court erred when it failed to grant a continuance which was not sought. *United States v. Tatum*, 496 F.2d 1282 (5th Cir.1974). *See Davis v. State of Alabama*, 596 F.2d 1214 (5th Cir.1979).

2. Confrontation.

■ Appellants complain that the government's failure to call Gunter to testify denied them their constitutional right of confrontation. This challenge fails for two reasons. First, "the Government is under no duty to call witnesses even if they are informers." *United States v. Tatum*, 496 F.2d at 1284. Second, the only reference to any direct statement by Gunter came on redirect of agent Sanchez, after lengthy cross-examination, when the agent testified that Gunter had told him the methamphetamine sample came from Frascone. Defense counsel's objection to this hearsay was sustained and the jury was instructed to disregard the comment. In such an instance it cannot be said that the hearsay testimony of an available witness was offered as proof of a contested fact and that the defendant was denied the right of confrontation. Here the hearsay statement was found objectionable and a timely cautionary instruction was given. Further, the record reflects that pursuant to the writ of habeas corpus ad testificandum Gunter was available throughout the trial. The government did not seek to offer his testimony. The defense likewise opted. From the description of Gunter gleaned from the record, that decision by counsel for the government and counsel for the defense is easily understood.

3. Entrapment—Outrageous Conduct.

Burcky maintains that he was entrapped as a matter of law because the government failed to prove his predisposition to commit the crime charged, and he contends that the conduct of the prosecutor and of the investigators was outrageous and fundamentally unfair. Neither contention bears merit.

■ There was sufficient evidence produced to warrant the jury's finding that Burcky was predisposed to commit the offenses charged. The government offered testimony and exhibits in support of its theory. Burcky offered evidence in support of the Nigerian "sting" defense. The

jury was called upon to perform the classic jury function—determine credibility. It did so, obviously rejecting the defense's response. The judge's charge on entrapment was correctly stated. On review, we look only to determine whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt .... [v]iewing the evidence presented ... and the inferences that may be drawn from it in the light most favorable to the government." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). We are not persuaded that the jury erred.

█ Nor are we persuaded that appellants have pointed to any outrageous conduct on the part of the investigating officers or the prosecutor which would warrant reversals and an embargo on further prosecution. The record reflects that the investigation was done with skill and dispatch. The prosecution was likewise quite firm but fair. That there was a superseding indictment and vigorous contests over discovery and other procedural and substantive disputes is not tantamount to unfair conduct. Such is more reflective of our treasured and keenly-honed adversary system.

4. Jury Instruction.

█ Appellants complain that the court erred in refusing to give their requested instruction that Gunter was an agent of the law enforcement officers. Evidence abounds as to Gunter's role in this entire affair, including testimony that he was paid thousands of dollars by the officers. The entrapment charge refers to "law enforcement officers or their agents." Although it would have been appropriate to outline the parameters of agency for purposes of the entrapment charge, a reading of the court's instructions, against the backdrop of the evidence in the case, satisfies us that the jury was neither misled nor confused. "A trial judge is afforded broad discretion in tailoring jury instructions, and the failure to adopt a party's proposal will warrant

reversal only where the charge considered as a whole does not correctly reflect the issues and law." *United States v. Harrelson*, 705 F.2d 733, 736–37 (5th Cir.1983).

5. Production of Tapes.

█ Frascone argues that he was entitled to an order compelling production of the two mystery tapes. The record reflects that the government did not have possession of the tapes sought. Filings and statements by the prosecutor so attest. The affidavit by defense counsel, based upon statements made by Gunter, support the government's response. The Fed.R. Crim.P. 16 motion directed to the government resulted in the production of the tapes that the government possessed. That motion cannot be used as a basis for complaining that the court did not require Gunter to produce what Gunter might have possessed. Gunter was being held by the Marshal and was available to defense counsel as well as the prosecutor. Gunter could have been brought into the courtroom, out of the presence of the jury, and asked about the tapes. The tapes could have been made the subject of a subpoena duces tecum directed to Gunter under Fed.R. Crim.P. 17(c). Defense counsel chose neither course but elected to stand on the Rule 16 motion previously directed to the government. Readily available steps and procedures to establish the existence, whereabouts, and relevance of the tapes were not taken. Appellants will not now be heard to complain.

6. Prejudicial Comment by Prosecutor.

█ Frascone argues that the prosecutor committed reversible error by attacking defense counsel in closing argument by stating:

Let me point out something to you, Ladies and Gentlemen. I take an oath to see that justice is done. They take an oath to represent their client zealously ___

This is an improper statement; it seeks to draw the cloak of righteousness around the prosecutor in his personal status as government attorney and impugns the integrity of

defense counsel. *United States v. McDonald*, 620 F.2d 559 (5th Cir.1980); *United States v. Garza*, 608 F.2d 659 (5th Cir. 1979). Defense counsel quite appropriately interrupted the statement with an objection. The judge sustained the objection, and in response to a request of defense counsel, immediately instructed the jury not to consider the remark by the prosecutor for any reason. In such an instance, an improper comment will not result in a reversal unless we are persuaded that the curative instruction is not likely to remove the taint and adequately abate the damage. *United States v. Cook*, 592 F.2d 877 (5th Cir.1979); *United States v. Harbin*, 601 F.2d 773 (5th Cir.1979).

■ In concluding that this comment does not warrant reversal, we consider that it was made at the close of rebuttal at the tail-end of what began as a fair response by the prosecutor to vigorous challenges by defense counsel. *United States v. Nanez*, 694 F.2d 405 (5th Cir.1982). It is viewed as an excessive statement made in the heat of closing argument of a hard-fought case, one which was objected to and subjected to an instanter cautionary instruction. In this instance, it is not cause for reversals of defendants' convictions.

7. Limitation of Closing Argument.

■ Finally, Frascone argues that the district court unduly restricted counsel's efforts in closing argument to point to the government's failure to call Gunter as a witness. The record does not support this contention. When counsel for Burcky first made a forceful statement about Gunter's noted absence from the witness stand the government objected and the objection was sustained. Thereafter, on at least three occasions, counsel again referred to Gunter's absence without objection by the prosecutor or intervention by the court. During the closing argument by Frascone's counsel, a reference to Gunter's failure to testify was made. There was no objection by the prosecutor and no comment or rul-

ing by the court. This assignment of error is without merit.

The convictions are AFFIRMED.