BILLY RAY JACOBS, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 15295

August 27, 1985                                        705 P.2d 130

[Rehearing denied December 10, 1985]

*Aebi, FitzSimmons & Lambrose,* Carson City, for Appellant.

*Brian McKay,* Attorney General, *William A. Maddox,* District Attorney, *Charles P. Cockerill,* Deputy, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Appellant was convicted by a jury of first degree murder of his ex-wife, Ethel Jean Jacobs, with the use of a deadly weapon, and sentenced to two consecutive life terms with the possibility of parole. This appeal followed.

Appellant has raised numerous issues on appeal. However, because we conclude (1) the trial court committed reversible error by admitting prior statements of appellant's five year old son, Larry, and (2) the prosecutor improperly asked the jurors to put themselves in the place of the victim at the time of the shooting, we limit our opinion accordingly.

### FACTS

In 1973, shortly after his release from prison, Billy and Ethel settled in Carson City where he obtained a job with Flammer Chevrolet. They had a son, Larry; appellant's life revolved around his work and family.

In November 1982, Billy had been told by Ethel that a divorce was necessary to protect their home and possessions from creditors. Because appellant was illiterate, Ethel contacted a lawyer and made all of the arrangements for the divorce.

After the divorce, Ethel told Billy to move out of "her" house. He reluctantly complied, but continued to visit Ethel and Larry, hoping for a reconciliation. After a visitation on Christmas 1982, Billy was optimistic that his relationship with Ethel was improving.

On January 2, 1983 Billy picked Larry up in the morning and they spent the day talking to friends, eating lunch and playing in the park.

After dropping Larry off at Ethel's house, Billy consumed serveral drinks and drove around aimlessly. Depressed, he returned to Ethel's house to discuss reconciliation. He pleaded with her to take him back but she refused, telling him that she had a new boyfriend. She then demanded that he leave.

Appellant testified that when Ethel said this, he grabbed a shotgun located in an adjoining room and shot her. Larry, then 5 years old, stated that appellant was carrying the shotgun, which he was going to give him, when he came to the house. The boy further stated the gun was not loaded until just before it was fired.

After the shooting, appellant took Larry to the apartment of his friend, Earl Fairman, and told Earl to call the police. When they arrived, appellant went quietly with them.

## PRIOR STATEMENTS

Appellant contends that the trial court erred in admitting certain testimony regarding his son's prior statements. Larry was not available for cross-examination, as required by statute, and the statements contained prejudicial evidence relating to matters not brought out during direct examination of Larry.

Prior consistent statements of a witness are generally considered to be inadmissible hearsay. However, under NRS 51.035(2)(b) they are admissible to rehabilitate a witness charged with recent fabrication or having been subjected to improper influence.[1]

Appellant's counsel attempted to impeach the boy's testimony by suggesting that Larry's maternal grandmother had improperly influenced him. To rebut this charge the state introduced Larry's prior statements through testimony of Detective Mike Efford and Janice Carruthers.[2] When Efford and Carruthers testified concerning prior statements, Larry was not present for cross-examination, having returned to the home of his maternal grandmother in Arkansas. Clearly, he was not available for cross-examination as mandated by NRS 51.035(2).

Larry's prior statements were also inadmissible to the extent they exceeded in scope the testimony elicited during direct examination.[3]

---

[1] 51.035 *"Hearsay" defined.* ·"Hearsay" means a statement offered in evidence to prove the truth of the matter asserted unless:

. . .

2. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

. . .

(b) Consistent with his testimony and offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;

[2] Larry had been interviewed by Efford on January 2 and 3, 1983. Carruthers was Larry's foster parent from January 3, 1983 to January 7, 1983.

[3] A sampling of the extraneous material elicited during the state's attempt to rehabilitate includes the following: (1) that Billy shot his ex-wife because he was upset that she was seeing another man, (2) that after the shooting, Larry was yelling and crying and that Billy got a little mean with him, (3) that after Ethel was shot, Larry went over and shook her and pleaded, "wake up, wake up," and (4) that when Larry was staying with Janice Carruthers, he repeatedly said his mother was in a graveyard and on one occasion he said that he wanted to see his mother's grave so that he could put some flowers on it.

While it would have been proper for Efford and Carruthers to have testified as to prior consistent statements, had Larry been present for cross-examination, this did not open wide the evidentiary door for extraneous matters. U.S. v. Dennis, 625 F.2d 782, 797 (8th Cir. 1980); State v. Haggard, 619 S.W.2d 44, 48 (Mo. 1981) *vacated on other grounds* 459 U.S. 1192 (1983). The evidence improperly presented to the jury in this case was manifestly prejudicial to appellant.

## FINAL ARGUMENT

Lastly, we express our disapproval of comments made by the prosecuting attorney in final argument when he said:

> He came in that house to load that shotgun and blow her away. It is that simple, and it's hard to talk about it in crude terms like that, ladies and gentlemen, and I will not tell you to put yourselves in Mrs. Jacobs' position looking down the barrels of this shotgun, because that would be improper.

In McGuire v. State, 100 Nev. 153, 158, 677 P.2d 1060 (1984) we noted that arguments asking jurors to place themselves in the place of the victim or a member of the victim's family are "exceedingly improper in and of themselves, . . ." In the instant case the prosecutor's resourceful disavowal after the fact of any intention to make an improper argument did not remedy the transgression.

Appellant did not deny that he shot his wife. The jury faced a difficult task in determining his mental state at the time. Evidence that appellant had the requisite state of mind for first degree murder was not overwhelming. Because of prejudicial material erroneously admitted under the prior statement doctrine and improper comments by the prosecutor in closing argument, we are persuaded a new trial is warranted. Accordingly, we reverse and remand for a new trial.