GREGORY ALAN COLLIER, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 15161

September 5, 1985 705 P.2d 1126

*Morgan D. Harris,* Public Defender, Las Vegas; *Terrence M. Jackson,* Deputy, Las Vegas; *Susan Deems Roske,* Deputy, Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, Las Vegas; *James Tufteland,* Deputy, Las Vegas; *Carolyn Ellsworth,* Deputy, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The appellant, Gregory Alan Collier, shot and killed a convenience store clerk and robbed the store. Following his arrest and indictment, a jury convicted Collier of first degree murder with use of a deadly weapon, and of robbery with use of a deadly weapon. After a penalty hearing, the jury returned a death sentence. Collier appeals the first degree murder conviction and the imposition of the death sentence. We affirm the conviction, but we set aside the death sentence and we remand for a new penalty hearing.

The record indicates that in Las Vegas, on the evening of June 3, 1981, nineteen-year old Gregory Collier went out drinking. That night he consumed at least eight beers and several "shots" of tequila, as well as several Quaaludes. By eleven P.M., he was having trouble walking. Nevertheless, early the next morning he had found his way to a Stop 'N Go convenience store. Two witnesses saw him there with the store's clerk, Earl Harris. Later, Harris was found shot to death in the store, with his hands bound behind his back. Some money and a pocket calculator were missing. Collier's fingerprint was found in the store, and he was arrested. The stolen calculator was discovered in Collier's possession.

The Clark County Grand Jury indicted Collier. After a trial, a jury convicted him for first degree murder and robbery, both aggravated through the use of a deadly weapon. In the ensuing penalty hearing, testimony covered Collier's troubled adolescence, his relative youthfulness at the time of the murder, and certain prior offenses.

After receiving testimony as to aggravating and mitigating circumstances, the court limited closing arguments to only one hour per side, despite defense counsel's objections. Then, during the arguments, the court repeatedly permitted the prosecuting attorneys to overstep established bounds of legitimate advocacy—

again, in most instances, over defense counsel's objections. Due to the limitation on final argument, combined with the effect of this prosecutorial misconduct, we feel compelled to set aside the death sentence and to remand the case for a new penalty hearing. Because the district court's failure to correct multiple incidents of prosecutorial misconduct constituted the more egregious of its errors, we will address the prosecutor's rhetorical improprieties first.

## I

Thus, once again, we regretfully turn to consider the problem of prosecutorial misconduct: a burden to the judicial system that is totally unnecessary and, so far as the prosecution is concerned, often self-defeating.

Our district courts have a duty to ensure that every accused shall receive a fair trial. *E.g.,* Garner v. State, 78 Nev. 366, 373, 374 P.2d 525 (1962). This duty requires that trial courts exercise their discretionary power to control obvious prosecutorial misconduct *sua sponte.* State v. Cyty, 50 Nev. 256, 259, 256 P. 793 (1927); *accord* Viereck v. United States, 318 U.S. 236, 237 (1943); Greenberg v. United States, 280 F.2d 472, 474 (1st Cir. 1960); Commonwealth v. Sherman, 2 N.E.2d 477, 484 (Mass. 1936). Unfortunately, in the instant case, the trial court did not restrain prosecutorial misconduct when defense counsel tendered timely contemporaneous objections, nor did it intervene *sua sponte* in other appropriate instances.

For example, in closing argument during the penalty phase, the prosecuting attorney based an appeal that Gregory Collier should die upon references to the criminal history of one of Nevada's most notorious criminals, Patrick McKenna, who currently is under sentence of death.[1] *Inter alia,* the prosecuting attorney asserted:

---

[1]At the time of Collier's trial, McKenna had been receiving vast attention in the media for the murder of a fellow jail inmate, J. J. Nobles. This court recently affirmed a sentence imposing the death penalty upon McKenna for this crime, through an opinion which recited some of McKenna's extensive criminal history. *See,* McKenna v. State, 101 Nev. 338, 705 P.2d 614 (1985). Over the years, McKenna also has received extensive media attention in the Las Vegas area for other violent crimes including kidnapping, murder and sexual assault. Details of his lurid career are partially recited in McKenna v. State, 98 Nev. 323, 647 P.2d 865 (1982); McKenna v. State, 96 Nev. 811, 618 P.2d 348 (1980); McKenna v. State, 85 Nev. 524, 458 P.2d 358 (1969); and Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966).

> The prison doesn't rehabilitate.
>
> . . .
>
> Sure. We rehabilitate a few criminals and we are lucky sometimes but to the large part prisons don't rehabilitate.
>
> And some people would argue that the purpose, the sole purpose, of prison is to incapacitate and contain someone as Mr. Dougherty testified.
>
> Well, I suppose that prison does do that and Mr. Jackson [the public defender] asks you to return a life sentence for Gregory Collier so that he can be incapacitated.
>
> But, prison does not prevent crimes against fellow inmates, ladies and gentlemen.
>
> Prison didn't keep Patrick McKenna—
>
> [defense objection interposed and overruled]
>
> Prison didn't keep Patrick McKenna, one of our more notable inmates, from strangling his fellow inmate in jail, J.J. Nobles.

These remarks—which sought to promote a conclusion that Collier's rehabilitation was improbable, that he might well kill again while in prison, and that he should therefore be put to death— were highly inappropriate. *See* State v. McLoughlin, 652 P.2d 531, 536 (Ariz. 1982); People v. Jones, 37 Cal.Rptr. 454, 464 (Cal.App. 1964). Comments of this sort divert the jury's attention from its proper purpose, which is the determination of the proper sentence for the defendant before them, based upon his own past conduct.

 ██ ██

It should be noted that these remarks were also improper because they discussed matters not in evidence. Patrick McKenna was not on trial; the record contained no evidence whatever about his unrelated criminal history; no factual basis whatever existed for suggesting any relationship between McKenna and Gregory Collier. Of course, it may be proper for counsel to go beyond the evidence to discuss general theories of penology such as the merits of punishment, deterrence and the death penalty. *E.g.,* Gregg v. Georgia, 428 U.S. 153, 160 (1976) (Stewart, Powell & Stevens, J.J. opinion); Davis v. State, 665 P.2d 1186, 1200-01 (Okla.Crim.App. 1983). In general, however, factual matters outside the record are irrelevant and are not proper subjects for argument to the jury. State v. Kassabian, 69 Nev. 146, 149, 153-54, 243 P.2d 264 (1952). And here, by equating Collier's unknown future in prison to the history of McKenna as portrayed in the media, the prosecuting attorney deliberately sought to convince the jury that there was but one "rational" solution— *i.e.,* to execute Collier before he could kill again.

■■■■■

Another instance of prosecutorial misconduct concerns an appeal that the jury must be angry with Collier or else "we are not a moral community. . . ." The prosecutor declaimed:

The moral community is one which has its base in law and trust and others have to obey these laws.

Gregory Collier has violated that trust. . . .

If we are not angry with him, the implication then is we are not a moral community and that is—

[objection interposed and overruled]

. . .

Your anger is a sign of your caring on the part of this community and its citizens.

The chance to see that this killer gets what he deserves is something this society, this community, needs.

In justification of this effusion, the prosecution now urges us that general comments about community standards are proper, and that Gregg v. Georgia, *supra,* supports this position. The *Gregg* decision, however, discussed a legislature's implementation of the community's moral outrage through legislation. *Id.* at 186-87 (Stewart, Powell & Stevens, J.J. opinion). *Gregg* in no way supports the view that a prosecutor may blatantly attempt to inflame a jury by urging that, if they wish to be deemed "moral" and "caring," then they must approach their duties in anger and give the community what it "needs": "[t]he chance to see that this killer gets what he deserves."

■■■■■■■

The prosecuting attorney also improperly commented over objection that Collier "would still have hope, hope of escape, pardon. . . ." Remarks about the possibility of escape are improper. *See* State v. McLoughlin, 652 P.2d 531, 536 (Ariz. 1982). The prospect of escape is not part of the calculus that the jury should consider in determining a defendant's sentence.[2]

■■■■■■

The penultimate instance of prosecutorial misconduct occurred, however, when the prosecuting attorney stated:

---

[2]Earlier this year we articulated an objective, unemotional jury instruction to be used in the future concerning the issue of possible pardon. Petrocelli v. State, 101 Nev. 46, 56, 692 P.2d 503 (1985). This instruction declares that a jury should not speculate about the possibility of a pardon. *Id.* In the same vein as *Petrocelli,* the Supreme Court has very recently disapproved of prosecuting counsel telling the jury in argument that a pardon might later be granted to the defendant. *See* Caldwell v. Mississippi, 105 S.Ct. 2633, 2639 (1985).

> Mr. Jackson [defense counsel] asks you to look at Gregory Alan Collier and to look him in the eye and tell him that you want to kill him, to tell him that you want to execute him.
>
> Ladies and gentlemen, I would not ask you to do that unless I could do that myself.

Then, it appears, the prosecuting attorney melodramatically faced the defendant, and exhorted him: *"Gregory Alan Collier, you deserve to die."* (Emphasis added.)

These remarks were egregiously improper. In Tart v. State, 634 P.2d 750, 751-52 (Okla.Crim.App. 1981), the court reversed a conviction achieved when a prosecutor similarly told a defendant: "[Y]ou are guilty under the evidence and the law. . . ." *See also* Nevius v. State, 101 Nev. 238, 248, 699 P.2d 1053 (1985) (prosecutor must not seek death penalty on behalf of the victims and himself).

 ██

Such an injection of personal beliefs into the argument detracts from the "unprejudiced, impartial, and nonpartisan" role that a prosecuting attorney assumes in the courtroom.[3] State v. Rodriguez, 31 Nev. 343, 346, 102 P. 863 (1909). By stepping out of the prosecutor's role, which is to seek justice, *id.* at 347, 102 P. 863, and by invoking the authority of his or her own supposedly greater experience and knowledge, a prosecutor invites undue jury reliance on the conclusions personally endorsed by the prosecuting attorney. United States v. Frascone, 747 F.2d 953, 957 (5th Cir. 1984); Tucker v. Kemp, 762 F.2d 1480, 1484-85 (11th Cir. 1985) (en banc); *see* State v. Gunderson, 144 N.W. 659, 660 (N.D. 1913). Prosecutors therefore must not express their personal beliefs, as was done here. Emerson v. State, 98 Nev. 158, 163-64, 643 P.2d 1212 (1982); Owens v. State, 96 Nev. 880, 885, 620 P.2d 1236 (1980).

 ██

We now turn to two comments not initially objected to at trial. Because of their nature, we believe they merit our disapproval, and constituted proper occasions for *sua sponte* intervention by the district court. The first comment was that the coroner "had to carry [Harris] out of that store in a body bag and bury him someplace because this man [Collier] decided that his son wouldn't have a father." This comment was manifestly improper.

---

[3]The record contains a newspaper clipping which illustrates how this remark by the prosecuting attorney was perceived. The remark was originally reported in the Las Vegas Review Journal as "I execute you, you murderer." Apr. 16, 1981, at 1B. Although the newspaper corrected the quotation in a later issue, the incorrect quotation demonstrates how an eyewitness understood the thrust of the prosecuting attorney's closing arguments.

Mears v. State, 83 Nev. 3, 12 & n. 4, 422 P.2d 230 (1967) ("A little girl is fatherless, and a woman is without her husband. . . . There was a little girl here that will not be able to hear her daddy say, 'Merry Christmas' this year. . . . By your verdict you can denounce this conduct.") *Accord* Dearman v. State, 93 Nev. 364, 368 & n. 3, 369, 566 P.2d 407 (1977) (reference to the decedent's inability to keep his New Year's resolutions); Moser v. State, 91 Nev. 809, 813 & n. 4, 544 P.2d 424 (1975) (reference to the impact on the victim's family at Christmas time).

The final remark we denounce concerns the prosecuting attorney's reference to the costs of imprisonment: "I could argue that keeping Gregory Collier in prison for life at a cost to the taxpayers of $35,000.00 a year isn't worth it. But, I will not argue that. . . ." In the first place, this remark vastly overstated the cost of maintaining an inmate in the Nevada State Prison, and was totally unsupported by the record. Perhaps more importantly, the jury could hardly fail to grasp the inference tendered by the prosecuting attorney's factually inaccurate, unsupported remark, to wit: that the jury should save the state $35,000.00 per year by imposing the death penalty upon Gregory Collier. To proffer the issue of saving money through a particular sentence for the defendant is improper. Brooks v. Kemp, 762 F.2d 1383, 1412 (11th Cir. 1985) (en banc); State v. Jordan, 294 P.2d 677, 679 (Ariz. 1956); *see* State v. Mircovich, 35 Nev. 485, 492, 126 P. 765 (1913); *cf.* McGuire v. State, 100 Nev. 153, 158, 677 P.2d 1060 (1984) (costs of witnesses paid by the state on behalf of the defendant not properly raised before the jury). Evidently, the prosecuting attorney realized the impropriety of such an appeal, and therefore resorted to the rather transparent ruse of mentioning the improper argument but then disclaiming intent to present it. This subterfuge must fail; for this court has recently determined that a "prosecutor's resourceful disavowal after the fact of any intention to make an improper argument [does] not remedy the transgression." Jacobs v. State, 101 Nev. 356, 705 P.2d 130 (1985).

In sum, each of the foregoing arguments was improper, and to permit them was error. In a particular case, any of them alone might be a ground for reversal. In the instant case, we need not so hold, but need only consider whether their cumulative impact—combined with the effect of the court's limitation on final argument—warrants the granting of a new penalty hearing.

II

As previously noted, the trial court limited closing arguments

to only one hour per side. This limitation was imposed even though the guilt phase of trial had lasted 5 days; the penalty phase consumed another 2 days; the jury had heard testimony from more than 30 witnesses; and the trial transcript covered 1185 pages. Based on our review of this substantial record, we determine that the one-hour limitation on closing arguments during the penalty phase constituted an abuse of the trial court's discretion.[4]

"The unreasonableness of this restriction is accented when it is realized that the outcome was to cast the die of fate for the whole of eternity for the defendant." State v. St. Clair, 282 P.2d 323, 332 (Utah 1955). Even if the public defender's task had not been rendered more onerous through the prosecutorial misconduct previously discussed, defense counsel would have had less than two minutes to review the diverse roles of each witness in the case. In addition, counsel needed time to discuss the extent to which mitigating and aggravating circumstances had been established by the record. Counsel needed to make general opening and closing remarks, to thank the jury, to remind them of their weighty duties, and to perform other traditional rhetorical functions. In another case, it might well have been reasonable to impose a one-hour time limitation. In the instant case, however, we believe the trial court abused its discretion by limiting defense counsel to only one hour of final argument.

## III

[Headnotes 16–19]

We previously have had occasion to reverse sentences based on errors arising from prosecutorial misconduct alone. In the instant matter, however, the time limitation imposed by the trial court did not impinge merely on defense counsel's capacity to address the issues properly before the court. The public defender was not

---

[4]E.g., People v. Keenan, 13 Cal. 581, 582 (1859) (with 14 witnesses and voluminous testimony, 1½ hours of argument was too little in a murder case); Fugate v. Commonwealth, 72 S.W.2d 47, 48-49 (Ky. 1934) (with the amount of evidence and the gravity of the murder charge, 25 minutes of argument was too little); Ray v. State, 330 So.2d 580, 585 (Miss. 1976) (30 minutes of argument was too little in a case alleging illegal discharge of a firearm into a dwelling); State v. Tighe, 71 P. 3, 9 (Mont. 1903) (with a 5 day trial and many witnesses, 1¾ hours of argument was too little in a murder case); State v. Rogoway, 81 P. 234, 235 (Or. 1905) (with a 3 day trial, 21 witnesses and 51 exhibits, 45 minutes of argument was too little); State v. Ballenger, 24 S.E.2d 175, 177 (S.C. 1943) (with 22 witnesses and less than 3 minutes per witness for arguments, one hour of oral argument was too little time in a murder case); State v. St. Clair, 282 P.2d 323, 331-32 (Utah 1955) (with 16 witnesses and conflicting testimony, 40 minutes of argument was too little time in a murder case); State v. Mayo, 85 P. 251, 254 (Wash. 1906) (with more than 4 days of trial, 20 witnesses and a record longer than 500 pages, 1½ hours of argument was too little in a murder case).

only forced to compress his argument about legitimate issues into the hour allowed to him; he also was left severely limited in time to repair potential prejudice improperly interjected through prosecutorial misconduct. Thus, we have concluded that the cumulative effect of the multiple errors discussed herein requires us to set aside the sentence heretofore imposed, and to remand the case for a new penalty hearing. Hylton v. State, 100 Nev. 539, 541, 688 P.2d 304 (1984); Emerson v. State, 98 Nev. 158, 164, 643 P.2d 1212 (1982); Garner v. State, 78 Nev. 366, 375, 376, 374 P.2d 525 (1962).[5]

In sum, we hold that the court's failure to control the prosecutorial misconduct, and the time limitation imposed on closing arguments, constituted errors which in combination with each other denied appellant Gregory Collier a fair sentencing hearing. We therefore set aside his death sentence and we remand the case for a new sentencing hearing.

We have examined the other assignments of error and find them to be without merit.

---

[5]Although we need not so hold, we note that the errors mentioned herein arguably might all be deemed to be of a constitutional magnitude. Prosecutorial misconduct can violate the fair trial provision of our state's constitution. State v. Teeter, 65 Nev. 584, 647, 200 P.2d 657 (1948); State v. Rodriguez, 31 Nev. 343, 347, 102 P. 863 (1909); accord United States v. Fischbach & Moore, Inc., 750 F.2d 1183, 1194 (3rd Cir. 1984); Tucker v. Francis, 723 F.2d 1504, 1506 (11th Cir. 1984); State v. Muskus, 109 N.E.2d 15, 19 (Ohio 1952), appeal dismissed, 115 N.E.2d 585 (Ohio 1953); see also Nev. Const., art. I, § 8. Undue limitations on argument by counsel may violate state and federal constitutional provisions mandating effective assistance of counsel. People v. Keenan, 13 Cal. 518, 584 (1859); People v. McMullen, 133 N.E. 328, 330 (Ill. 1921); State v. Rogoway, 81 P. 234, 234 (Or. 1905); State v. Ballenger, 24 S.E.2d 175, 177 (S.C. 1943); State v. Mayo, 85 P. 251, 254 (Wash. 1906); see Gardner v. Florida, 430 U.S. 349, 360, 362 (1977). The penalty phase of a trial requires effective assistance of counsel, Mazzan v. State, 100 Nev. 74, 79, 675 P.2d 409 (1984), and to be effective, counsel needs the opportunity to present the client's case to the jury.